J-A24011-16

2017 PA Super 253

| PETER Y. BENNETT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| PAMELA A. BENNETT | |
| | No. 428 EDA 2016 |

Appeal from the Order January 19, 2016
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 1995-60876-E

BEFORE: BOWES, OTT AND SOLANO, JJ.

OPINION BY BOWES, J.: **Filed August 4, 2017**

Peter Y. Bennett ("Husband") appeals from the March 1, 2016 order imposing a constructive trust over a pension benefit that accrued during his marriage to Pamela A. Bennett ("Wife").[1] We reverse.

Husband and Wife married on January 29, 1972 and divorced approximately twenty-three-and-one-half years later. Two children were born of the marriage. In anticipation of the divorce, the parties executed a property settlement agreement to facilitate equitable distribution. The agreement covered the various economic aspects of the divorce, including

---

[1] Technically, Husband receives two related pension benefits that he earned while working for the American Can Company and its successor, James River Corporation, for thirteen years during the marriage. For ease of discussion, we refer to the pensions as a single asset.

the distribution of marital assets and Husband's assent to paying the marital liabilities, alimony, child support, and the children's college expenses. As it relates to the present case, the accord provides:

> 3. Legal Advice. Each of the parties acknowledges that he and she has had the opportunity to consult with independent legal counsel regarding the terms and provisions of this Agreement and his or her legal rights and obligations, and each party further acknowledges and accepts that this Agreement is, in the circumstances, fair and equitable, and that it is being entered into freely and voluntarily, and that the execution of this Agreement is not the result of any duress or undue influence. **Each party has made a full and complete disclosure to the other of his and her entire assets and liabilities, and each is informed and familiar with the property, estate and assets, earnings and income of the other**.
>
> . . . .
>
> 6. Distribution of Property.
>
> (a) The parties acknowledge that they have previously sold and divided to their mutual satisfaction the proceeds from the sale of their former marital residence. Each party shall retain the proceeds from the sale thereof received by him and her free and clear of any claim of the other.
>
> (b) **The parties have previously divided to their mutual satisfaction all** items of tangible personal property, household furnishings, motor vehicles, bank accounts, investments, business interests, stocks, securities, **retirement accounts**, insurance policies and **all other assets** which, as between the parties, are or may be subject to equitable distribution, and each party does hereby release and relinquish any and all claims that either of them have or may have with respect to any property, property interest or asset.

Property Settlement Agreement, 4/21/95, at 3, 4-5 (emphases added).[2]

Although the accord did not identify any specific marital assets or state the percentage basis that the assets would be divided, it listed the liabilities that Husband was solely responsible for repaying. Likewise, the agreement stipulated that the potential net proceeds from a possible lawsuit against Boise Cascade Corporation would be divided equally. During the evidentiary hearing, Wife testified that she requested fifty percent of the pension benefits because it was in keeping with the parties' promise to split the other assets equally.

The property settlement agreement was incorporated but not merged into the July 12, 1995 divorce decree. Approximately nineteen years later, on September 2014, Wife filed a petition to impose a constructive trust pursuant to 23 Pa.C.S. § 3505(d), which we reproduce *infra*. She averred that, in executing the property settlement agreement, Husband failed to make a full disclosure of the pension benefit that he earned during the

_____

[2] Husband and Wife dedicate significant discussion in their briefs to whether the reference to "retirement accounts" in the property settlement agreement subsumed the pension benefit that Husband earned during the marriage. However, that issue is a diversion. Regardless of the semantics of whether a "pension benefit" equates to a "retirement account," the asset is subject to the recital's catch-all provision "all other assets . . . subject to equitable distribution[.]" Property Settlement Agreement, 4/21/95, at 4.

marriage.[3]  Wife requested the creation of a constructive trust as to the previously undisclosed marital asset, an accounting of the monthly benefits Husband received since the account entered pay status, and fifty percent of the marital value of past and future benefits.  She also requested counsel fees and the costs associated with drafting the Qualified Domestic Relations Orders ("QDRO") needed to facilitate the future payment of her portion of the benefit.

Husband filed preliminary objections in the nature of a demurrer based upon the position that the formation of a constructive trust pursuant to § 3505(d) required, as a prerequisite, the filing of an inventory during the equitable distribution process, and, in the absence of that form, the statutory provision is inapplicable.  In addition, Husband leveled a preliminary objection to the petition based upon insufficient specificity insofar as Wife failed to assert that Husband secreted the pension's existence when the agreement was formed.  After conferring with the attorneys, the trial court summarily overruled Husband's preliminary objections and scheduled an evidentiary hearing on Wife's petition.

---

[3] While there was no discussion regarding whether the pension benefit had vested prior to the date of separation, we observe that non-vested pensions are marital property subject to equitable distribution. **Berrington v. Berrington**, 598 A.2d 31, 34 (Pa.Super. 1991).  Thus, it was an asset subject to disclosure/acknowledgment under the property settlement agreement.

The evidence adduced at the hearing revealed that Husband has a pension that entered pay status during October 2012. Since then, Husband has received a monthly benefit of $1,785.75, which calculates to an annual benefit of $21,429. Wife testified that she and Husband did not discuss the pension in anticipation of equitable distribution of their marital estate.[4] Their discussions focused upon liquidating the marital residence, which was subject to encumbrances, and satisfying debts. She identified two conversations with Husband wherein both parties agreed that the only significant marital asset was the family home. Neither party mentioned the pension or retirement benefits that possibly accrued during the marriage.

Wife did not assert that Husband mislead her or lied about the existence of the pension benefit. Instead, she testified that she was unaware of the pension and believed that the home was the only asset to be divided. She received $1,100 from the sale of the property. In relation to her view of the marital estate, Wife stated, "I didn't think there was anything. I didn't think I was signing away anything. And with the house, it

---

[4] Wife presented the expert testimony of John McGovern, C.P.A., who stated that the parties received a $29,000 retirement distribution from an unidentified account during 1992. Mr. McGovern was unable to specify whether the source of the distribution was an IRA, 401(k), vested pension, or a combination of retirement plans. The only meaningful information to flow from the witness was that, approximately three years prior to the parties' execution of the property settlement agreement, Husband and Wife both knew that some form of retirement income existed and withdrew at least a portion of it.

was $1100; I left the marriage with $1100, a car and two part-time jobs[.]" N.T., 1/19/16, at 47. Wife also testified that she believed the agreement was boilerplate and that the references to various assets did not apply to them. She explained, "I believed it was a template. I looked for the things that he and I agreed upon and made sure that they were [included] and signed it." *Id*. at 44.

During his testimony, Husband countered, "we did, in fact, review the document [and] we were very comfortable with the fact that the assets weren't identified [and] the fact I was going to pick up all the outstanding liabilities[.]" *Id*. at 71-72. He also testified that he believed Wife was aware of all of the marital assets. He stated that Wife had knowledge of the pension in the past because, along with the increase in salary, he and Wife considered the pension benefit when Husband faced the decision whether to accept his position with American Can Company and, then having been promoted by its successor, whether to uproot the family from its hometown in Connecticut and move to Virginia. In addition, he surmised that the 1992 distribution that Wife's expert referenced was connected to a 401(k) plan that Husband contributed to when he worked for those entities. *Id*. at 79, 86-87.

At the conclusion of the evidence, the trial court announced from the bench its decision to grant Wife's petition for a constructive trust. The court entered a final order memorializing its decision on March 1, 2016. Husband

filed a timely appeal.[5] His concise statement of errors complained of on appeal filed pursuant to Pa.R.A.P. 1925(b) leveled five issues[6], which he restates as follows:

_____

[5] The notice of appeal was filed prematurely approximately two weeks after the close of the evidentiary hearing. However, Husband's misstep was corrected on March 1, 2016, when the trial court entered a final order granting Wife's requested relief. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

[6] The Rule 1925(b) Statement asserted the following issues:

a. The Court abused its discretion and/or committed an error of law in granting Defendant's petition for a constructive trust over Husband's pension plans and awarding her 50% of the same on the basis that there was not a full and fair disclosure of the assets at the time of settlement despite Defendant's failure to allege fraud;

b. The Court abused its discretion and/or committed an error of law in granting Defendant's petition for a constructive trust over Husband's pension plans and awarding her 50% of the same despite the existence of contractual language in the Marital Settlement Agreement indicating that full and fair disclosure was made and that Defendant was satisfied with her knowledge of the estate at the time of Agreement; that the parties' waived discovery; that the parties mutually released each other from any claims related to their rights under Pennsylvania's Divorce Code; that the parties had divided in advance of the Agreement all assets to their mutual satisfaction, and;

c. The Court abused its discretion and/or committed an error of law in granting Defendant's petition for a constructive trust over Husband's pension plans and awarding her 50% of the same on the basis that Defendant overcame by clear and convincing evidence the presumption of disclosure and/or that Defendant

*(Footnote Continued Next Page)*

1.    Did the [t]rial [c]ourt err by granting a constructive trust pursuant to 23 Pa.C.S.A. § 3503(d) without establishing that [Husband] failed to disclose an asset as required by a general rule of the Supreme Court?

2.    Did the [t]rial [c]ourt err by finding that [Wife] rebutted by clear and convincing evidence the presumption of full disclosure by [Husband]?

3.    Did the [t]rial [c]ourt err by failing to affirm the terms of the parties' Property Settlement Agreement?

4.    Did the [t]rial [c]ourt err by applying its credibility determination as the standard for determining whether misrepresentation or fraud occurred in the execution for the Property settlement Agreement?

Appellant's brief at 4.

Husband's brief does not conform to Pa.R.A.P. 2119 insofar as he

failed to divide the argument into sections that correspond with the four

_(Footnote Continued)_ ————————————

did not have knowledge of the assets at the time the Agreement was executed.

d. The Court abused its discretion and/or committed an error of law in granting Defendant's petition for a constructive trust over Husband's pension plans and awarding her 50% of the same by applying its determination as to the credibility of the parties to its determination as to the plain reading of the disclosure and waiver language set forth in the Agreement.

e. The court abused its discretion and/or committed an error of law in granting Defendant's petition for a constructive trust over Husband's pension plans and awarding her 50% of the same by misapplying 23 Pa.C.S.A. § 3505(d) which applies only where there is a failure to disclose the assets as required by general rule of the Supreme Court.

Husband's Rule 1925(b) Statement, 2/3/16, at 1-2.

issues he raised in his statement of questions involved. Instead of complying with the procedural uniformity of Rule 2119, Husband identifies four overlapping arguments. For example, rather than enumerating his arguments in correlation with the numerals used in the statement of questions presented, Husband lists his arguments alphabetically. Moreover, those arguments are in disorder. Husband's argument A is actually four interwoven assertions, and his remaining arguments in B, C, and D do not align with any numerical counterparts. In addition, while addressing substantively different concerns, the arguments Husband identifies as B and D share an identical heading, "The Trial Court erred by Failing to Affirm the Parties Property Settlement Agreement." ***See*** Appellant's brief at 20, 30. Finally, Husband's argument D is a collection of various complaints, some of which are subsumed by issues three and four. Although this Court is authorized to quash a nonconforming brief, Husband's procedural missteps do not substantially impede our ability to perform appellate review, and we shall address the merits of the arguments that have been preserved for review in the Rule 1925(b) statement. ***See*** Pa.R.A.P. 2101; ***Commonwealth v. Adams***, 882 A.2d 496, 498 (Pa.Super. 2005) ("Despite the numerous defects in Appellant's brief, we will address the one claim that we are able to review[.]").

As noted in his statement of questions presented, Husband raises several procedural challenges to the trial court's application of 23 Pa.C.S. §

3505(d) under the facts of this case. However, since we ultimately find that the certified record does not sustain the trial court's factual findings in support of Wife's position that the constructive trust was warranted, we do not confront those arguments herein. Instead, we presume that § 3503(d) applies and address the effect of the recital in the property settlement agreement, wherein the parties acknowledged full and complete disclosure of assets.

Section 3505(d) of Divorce Code, provides as follows:

**(d) Constructive trust for undisclosed assets**.--If a party fails to disclose information required by general rule of the Supreme Court and in consequence thereof an asset or assets with a fair market value of $1,000 or more is omitted from the final distribution of property, the party aggrieved by the nondisclosure may at any time petition the court granting the award to declare the creation of a constructive trust as to all undisclosed assets for the benefit of the parties and their minor or dependent children, if any. The party in whose name the assets are held shall be declared the constructive trustee unless the court designates a different trustee, and the trust may include any terms and conditions the court may determine. The court shall grant the petition upon a finding of a failure to disclose the assets as required by general rule of the Supreme Court.

23 Pa.C.S. § 3503(d).

By its terms, § 3503(d) does not require a party to demonstrate that the failure to disclose an asset was deliberate or intentional. This is because the provision is triggered by a breach of a parties' affirmative obligation to "disclose information required by general rule of the Supreme Court," *e.g.*, an inventory under Rule 1920.33, which did not occur in this case.

However, mindful that parties to property settlement agreements are entitled to enforcement measures set forth in the Divorce Code, **see** § 3105(a), we find that the provision's silence as to disclosure clauses did not preclude Wife from invoking this remedial provision. **Cf. Creeks v. Creeks**, 619 A.2d 754 (Pa.Super. 1993) (where husband failed to include asset in inventory pursuant to agreement's disclosure clause, the breach triggers action for constructive trust). Nevertheless, prior to granting the requested relief in the case at bar, the trial court was required to reconcile the pension benefit's omission from the accord with Wife's affirmative acknowledgment that she received full and complete disclosure and was not only informed of, but also familiar with, the marital estate.

In Pennsylvania, the law of contracts governs a property agreement if the agreement is not merged into a divorce decree. **Crispo v. Crispo**, 909 A.2d 308, 313 (Pa.Super. 2006) ("property settlement agreements are presumed to be valid and binding upon the parties"). An agreement that is not merged, "stands as a separate contract, is subject to the law governing contracts and is to be reviewed as any other contract." **Id**. at 312-313.

Our Supreme Court previously explained,

under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties. **Robert F. Felte, Inc. v. White**, 451 Pa. 137, 302 A.2d 347, 351 (1973). In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. **Pines Plaza Bowling, Inc. v. Rossview, Inc.**, 394 Pa. 124, 145 A.2d 672 (1958). When the terms of a contract are clear and unambiguous, the intent of the

- 11 -

parties is to be ascertained from the document itself. ***Hutchison v. Sunbeam Coal Corp.,*** 513 Pa. 192, 519 A.2d 385, 390 (1986).

***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004).

We review the trial court's order upholding the agreement for an abuse of discretion. ***Lugg v. Lugg***, 64 A.3d 1109, 1110 n.1 (Pa.Super. 2013). As we explained in ***Lugg***, "[a]n abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." ***Id***. Additionally, we will not usurp the trial court's factfinding function." ***Id***.

In ***Simeone v. Simeone***, 581 A.2d 162 (Pa. 1990), our Supreme Court clarified the standards for determining the validity of marital settlement agreements and abolished the prior paternalistic approach to enforcement. The High Court announced that "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." ***Id***. at 165. As the venerable Joann Ross Wilder, Esquire, couched the concept in Pennsylvania Family Practice and Procedure 5th, 2002 at 96, "Parties are free to enter into bargains they later regret, and bad deals are as enforceable as good ones provided the agreement is free of fraud or duress."

As it relates to the case at bar, the ***Simeone*** Court admonished, "If an agreement provides that full disclosure has been made, a presumption of full disclosure arises." ***Id***. at 167. Likewise, the Court explained, "If a spouse

- 12 -

attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence." *Id.* Thus, "Absent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements." *Lugg*, *supra* at 1112; *Stoner v. Stoner*, 819 A.2d 529, 533 (Pa. 2003) (expressly rejecting approach which allows court to inquire into reasonableness of parties' bargain). This Court subsequently explained, "an agreement is valid even if it does not contain financial disclosure itself and can be upheld if it merely recites that such disclosure has been made." *Paroly v. Paroly*, 876 A.2d 1061, 1066 (Pa.Super. 2005). Indeed, "a full and fair disclosure in the property settlement agreement merely requires sufficient disclosure to allow the intended party to make an informed decision." *Busch v. Busch*, 732 A.2d 1274, 1278 n. 5 (Pa.Super. 1999).

Although this Court's holding in *Lugg*, *supra* concerned the waiver of disclosure rather than an acknowledgment of full disclosure, our reasoning is informative. In pertinent part, the *Lugg* Court addressed whether the trial court erred in denying a wife's claim to set aside a property settlement agreement due to her husband's failure to fully disclose assets when the agreement was executed. In an attempt to circumvent the fact that she expressly waived economic disclosure, the wife argued that a person cannot waive disclosure if they do not know what was being waived. *Id*. at 1112. The Court rebuffed that reasoning in light of the legislature's adoption of 23

Pa.C.S. § 3106, which allows a party to waive economic disclosure in a prenuptial agreement, and our High Court's prior reasoning in ***Stoner***, ***supra***, that "pre-and post-nuptial agreements are to be similarly viewed." ***Id***. at 1112-1113. Thus, the ***Lugg*** Court held that parties to a property settlement agreement may waive full economic disclosure. ***Id***. at 1113. Specifically, the Court held, "[w]e must reject the assertion that economic disclosure cannot be waived because the party waiving disclosure does not know the extent of what is being waived." ***Id***. at 1112.

Instantly, the trial court employed reasoning similar to the wife in ***Lugg*** in an attempt to elevate Wife's belated claim of lack of disclosure over her express assent that full and complete disclosure actually occurred and the acknowledgment that she was familiar with the marital estate. The lynchpin of the trial court's logic is that, notwithstanding Wife's explicit recognition of full disclosure, she should be excused from that provision because she believed that she knew the extent of the marital estate when she signed the agreement. Stated another way, the trial court concluded that Wife should not be bound by the disclosure recital because she was not actually familiar with all of the marital assets that she certified knowing about. The trial court's rationale conflicts with our analogous holding in ***Lugg*** that a party to an agreement can, in fact, waive economic disclosure even if they do not know the full extent of that waiver. Like the ***Lugg*** Court, we find herein that Wife cannot negate the recital affirming her knowledge of

the marital estate based upon a subsequent assertion that she did not know the full extent of the assets when she executed the certification. Plainly, having acknowledged both the disclosure and her familiarity with the assets, absent clear and convincing evidence of Husband's misconduct, Wife's subjective belief regarding the nature and extent of the marital estate is irrelevant. Thus, we conclude that the disclosure recital applies herein, and absent clear and convincing evidence of fraud, duress, or misrepresentation to permit Wife to overcome the presumption of full disclosure, the recital is valid and enforceable.

Next, we review the court's determination that Wife sustained her evidentiary burden of establishing fraudulent misrepresentation. Our High Court reiterated the elements misrepresentation as follows,

> In order to void a contract due to fraudulent misrepresentation, the party alleging fraud must prove, by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance. All of these elements must be present to warrant the extreme sanction of voiding the contract.

**Porreco v. Porreco**, 811 A.2d 566, 570-571 (Pa. 2002) (plurality) (internal citations omitted).

Instantly, Wife did not expressly assert misrepresentation in her petition for a constructive trust or during her testimony regarding the parties' discussion of the marital assets. Nevertheless, the trial court

- 15 -

reasoned that Wife was uninvolved with Husband's employment compensation beyond his salary, and therefore, she was unaware of the pension benefit that accrued during the marriage. Indeed, despite both the fact that Wife neglected to assert misrepresentation and the dearth of evidence to support its finding, the trial court went so far as to conclude that "Husband affirmatively told her that there were no other assets beyond the house considered in the Agreement." Trial Court Opinion, 3/31/16, at 6.

The record belies the trial court's findings of fact. Wife did not present any evidence of fraud or misrepresentation. At most, Wife established that the parties did not discuss the pension and that Husband did not disclose it. However, in light of her evidentiary burden to rebut the presumption of disclosure, evidence that a potentially inadvertent or negligent omission may have occurred is woefully inadequate to establish fraud or misrepresentation that would negate Wife's certification that she received full disclosure.

Notwithstanding Wife's failure to plead or prove misrepresentation under *Porreco*, *supra*, the trial court concluded that Husband misled her about the marital assets. As noted, the court's reasoning is founded upon a purported credibility determination in Wife's favor. However, the certified record cannot sustain the court's finding that a meaningful credibility dispute existed. In fact, the parties concur that the pension was not discussed before they executed the agreement, and Wife does not assert that Husband mislead her or misrepresented the marital estate. She simply testified that

she was unaware of the pension when she signed the recital certifying her familiarity with the assets. Thus, contrary to the trial court's expression of rationale, this case does not turn upon a credibility determination regarding whether Husband made an express misrepresentation.[7] The trial court erred in invoking the non-existent issue of credibility in order to compensate for Wife's failure to adduce evidence of fraud or misrepresentation.

Likewise, the record will not sustain the court's conclusion that Wife adduced clear and convincing evidence of misrepresentation. The only evidence in the certified record that could conceivably support the trial court's finding of misrepresentation are two of Wife's responses during cross-examination. At one point, Wife responded to an inquiry by retorting, "in my book and from our conversation, there was nothing, and I had no reason to believe that he would not have mentioned [the pension]." N.T., 1/19/16, at 60. Then, when asked whether she believed that Husband purposely withheld the information from her, she answered "it appears so." *Id*. This evidence is neither clear nor compelling. The first statement simply restates the fact that the asset was not discussed. The latter response is a qualified suggestion that, in the absence of any other

_____

[7] Any credibility dispute was limited to whether Wife had known of the pension in the past. However, regardless of whether Wife was completely unaware of the pension or had previously known of it and simply forgot when she executed the agreement, that issue is irrelevant to whether Husband intentionally mislead her.

acceptable explanation, Wife believed that Husband must have misled her. Both statements fail to reach the quantum of clear and convincing evidence of fraudulent misrepresentation that the High Court detailed in **Porreco**, **supra** (fraud requires material false representation made with intent to mislead).

In addition to the dearth of direct evidence to support the trial court's conclusion that Husband misrepresented the marital estate or intentionally withheld information from Wife regarding his pension benefit, the circumstantial evidence favoring that finding is limited to what the trial court characterized as Husband's evasiveness and argumentative answers during cross-examination. However, absent direct evidence indicating that Husband hid the asset or purposefully lied to Wife about its existence, Husband's demeanor during cross-examination is hardly clear and convincing evidence of fraud or misrepresentation.

In sum, Wife failed to assert fraudulent misrepresentation, much less prove it by clear and convincing evidence, and the trial court's purported credibility determination in her favor is ineffective. The undisputed facts established that Husband and Wife did not discuss the pension prior to executing the agreement. While the trial court speculates that Husband intentionally hid the asset from Wife, the evidence does not bear out that insinuation, and the trial court erred in relying upon a contrived credibility determination to negate Wife's failure to satisfy her evidentiary burden of

proving the requisite scienter to rebut the presumption that full disclosure occurred. **See Colonna v. Colonna**, 791 A.2d 353, 357 (Pa.Super. 2001) (rejecting wife's contention that she was not fully aware of her statutory rights because, absent proof of material misrepresentation or fraud, reviewing court may not examine whether parties attained informed understandings of rights they were surrendering); **Busch**, **supra** at 1278 n.5 (full and fair disclosure need only allow intended party to make informed decision).

As the certified record does not support the trial court's finding that Husband engaged in fraud or misrepresentation, the trial court erred in determining that Wife was not bound by the disclosure recital. Accordingly, we reverse the trial court order imposing a constructive trust over the pension benefits pursuant to § 3505(d).

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2017