J-S40018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANDREA WHILBY CLARKE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| OTMARO WOODROW SERVICE | : | |
| | : | |
| Appellee | : | No. 3224 EDA 2017 |

Appeal from the Order Entered August 31, 2017
in the Court of Common Pleas of Montgomery County
Civil Division at Nos.:  06-28032
07-12881

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 02, 2018**

Appellant, Andrea Whilby Clarke, appeals from the order dated  August 29, 2017, and filed August 31, 2017, granting Appellee, Otmaro Woodrow Service's Petition for Contempt, awarding Appellee $24,171.76 and directing Appellant to pay Appellee's counsel fees.[1]  We affirm.

We take the underlying facts and procedural history in this matter from the trial court's March 9, 2018 opinion and our independent review of the certified record.

> The parties were married on November 20, 1999, separated in 2006, and were divorced by decree entered on September 17, 2007.  Said divorce decree incorporated a Property Settlement Agreement ("PSA"), transcribed on the record as an Agreed Order dated August 1, 2007.

---

[1] The trial court's opinion refers to Appellant as "Wife" and Appellee as "Husband."

---

*   Retired Senior Judge assigned to the Superior Court.

The parties intended the PSA to be comprehensive in that it resolved all then-pending issues to the divorce. In fact, while on the record, the parties verified that they were reaching a "full, final and complete settlement" which would resolve the distribution of all marital assets, as well as their respective obligations to repay all marital debt.

In relevant part, the parties agreed Husband was to receive real property located within the Bugaud District, Montego Bay, Jamaica ("Property"). Specifically, the parties agreed, "Husband shall assume any mortgage, debts, or obligations with respect to that property and hold Wife harmless and indemnify her with respect to same." Notably, Wife received other real property including, but not limited to, another property within Westgate Hills, Montego Bay, Jamaica, along with the same attendant responsibilities and indemnification provisions as Husband.

The Montego Bay Property that husband received ultimately fell into foreclosure and, as a result, approximately $30,000 (funds used as the Property's down payment) was escrowed by a Jamaican bank. The Honorable Stephen R. Barrett entered an Order, dated May 12, 2009, which direct the Bank's attorney to transmit the escrowed funds to Husband's U.S. attorney. However, the Bank ignored Judge Barrett's May 2009 Order and thereafter followed a long period of inactivity on the docket.

Husband forwarded correspondence, dated December 27, 2012, to the Bank along with a copy of the divorce decree and the court transcript containing the PSA. The Bank replied via letter, dated February 25, 2013, which informed Husband that the escrowed funds could be released simply by Wife's written consent.

On September 21, 2015, Husband filed a Petition for Contempt against Wife. Wife filed her Answer and Cross Petition to Husband's Contempt Petition. In her Cross Petition, Wife sought reimbursement for storage fees (in excess of $25,000.00) incurred by Wife due to Husband's inaction related to some items of personalty.

On May 11, 2016, the [c]ourt conducted a protracted hearing on both parties' claims. [The court] entered an Interim Order, dated May 13, 2016, which directed the transfer of the escrowed funds from the Bank to a U.S. bank account for which

the parties' respective counsel would both serve as escrow agents. On June 2, 2016, yet another administrative Order was entered which directed the Bank to effectuate the transfer of the escrowed funds.

On August 10, 2017, over one year later and upon notification that the funds in Jamaica had finally been transmitted to U.S. soil, [the court] held a Short List Conference with counsel present for both parties. That same date, an Interim Order was entered which acknowledged the transfer of the escrowed funds (approximately $24,171.76 on deposit) had finally taken place.

Following the conference, [the court] entered an Order, dated August 29, 2017, finding Husband was entitled, as a matter of law, to receive the entirety of the escrowed funds.

(Trial Court Opinion, 3/9/18, at 1-4) (references to the record and footnotes omitted).

On appeal, Appellant raises the following questions for our review:

1. Whether the Trial Court erred in finding that [Appellee] is entitled to the entire $24,171.76 as "equity" in the subject property.

2. Whether the Trial Court erred in not applying Jamaica law in determining the parties' interest $24,171.76 which was being held by bank in Jamaica.

3. Whether the trial Court's findings that [Appellee] is entitled to the entire $24,171.76 and attorney fees are unsupported by the evidence of record.

4. Whether the trial Court erred in awarding [Appellee's] Counsel attorney fees.

5. Whether the trial court erred by failing to find in favor of [Appellant] for her claim for storage fees.

(Appellant's Brief at 4).

First and third, Appellant contends the court erred in finding that

Appellee was entitled to $24,171.76 as equity in the subject property. (*Id.*

at 9.) Preliminarily, we note that Appellant failed to cite to any legal authority in support of issue number one. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Umbelina v. Adams*, 34 A.3d 151, 161 (Pa. Super. 2011), *appeal denied*, 47 A.3d 848 (Pa. 2012) (citations omitted). Thus, we conclude that she has waived her argument at issue number one. *See id.*

Appellant raises the same issue, however, as issue number three. Appellant also claims the trial court erred in finding that she was responsible for Appellee's attorney fees.[2] (Appellant's Brief at 10). She contends the evidence was insufficient to "support the court's findings that the money that was being held in Jamaica was from equity in the property that was transferred to [Appellee] as part of the property settlement agreement." (*See id.*). However, Appellant argues that the verdict was contrary to the weight of the evidence. Appellant does not cite relevant authority for her insufficiency of the evidence claims and, accordingly, they are waived. *See Umbelina*, 34 A.3d at 161. Moreover, the claims would not merit relief.

_____

[2] We note that Appellant raised the issue of attorney fees in her statement of questions presented as question number four. However, other than the one-sentence reference to the issue, there is no discussion of the claim. Accordingly, Appellant's claims regarding attorney fees are waived. *See Umbelina*, *supra* at 161.

In Pennsylvania, the law of contracts governs a property agreement if the agreement is not merged into a divorce decree. An agreement that is not merged, stands as a separate contract, is subject to the law governing contracts and is to be reviewed as any other contract.

\* \* \*

We review the trial court's order upholding the agreement for an abuse of discretion. [A]n abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. Additionally, we will not usurp the trial court's factfinding function.

In **Simeone v. Simeone**, 525 Pa. 392, 581 A.2d 162 (1990), our Supreme Court clarified the standards for determining the validity of marital settlement agreements and abolished the prior paternalistic approach to enforcement. The High Court announced that "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." **Id.** at 165.

**Bennett v. Bennett**, 168 A.3d 238, 245 (Pa. Super. 2017), *appeal denied*, 181 A.3d 1081 (Pa. 2018) (some citations and quotation marks omitted).

"Traditional principles of contract law provide perfectly adequate remedies where contracts are procured through fraud, misrepresentation or duress. Consideration of other factors, such as the knowledge of the parties and the reasonableness of their bargain, is inappropriate." **Simeone**, **supra** at 400, 581 A.2d at 165 (citation omitted). Additionally, "[c]ontracting parties are normally bound by their agreements . . . irrespective of whether the agreements embodied reasonable or good bargains." **Id.** (citations omitted).

In this case, the parties "reached a global settlement of the entire matter pending before the court" and read the agreement into the record. (N.T. Hearing, 8/1/07, at 2). With the consent of the parties on the record, "[t]he house in the Bugaud District in Montego Bay" was to "be transferred to" Appellee "and he shall assume any mortgage, debts, or obligations with respect to that property and hold [Appellant] harmless and indemnify her with respect to same." (*Id.* at 5-6). The parties agreed that any other "claims are waived other than what is in this agreement." (*Id.* at 9). Appellant and Appellee also agreed "that should the other party be forced to defend an action brought against them as a result of the other party's failure to hold them harmless and fulfill their obligations that they will be responsible for that party's attorney's fees." (*Id.* at 11).

Here, the trial court opined that the "record is clear and unambiguous. The intent of the parties is easily ascertainable and can only be interpreted in one reasonable way: [Appellee] was to have the sole interest [in] the Montego Bay Property. [The c]ourt , then, interpreted the PSA as a matter of law and properly found [Appellee] was indeed entitled to the debt and the equity of the Property." (Trial Ct. Op., at 8).

After careful review of the record, we agree with the trial court's finding that the parties entered into the agreement voluntarily and conclude that Appellant failed to meet her burden of proving the invalidity of the agreement. *See Simeone*, *supra* at 400, 581 A.2d at 165. Thus, we discern no abuse of

discretion by the trial court. **See Bennett**, **supra** at 245. Appellant's first and third issues would therefore not merit relief.

In her second issue, Appellant claims the trial court erred in not applying Jamaican law in determining the parties' interests in the $24,171.76. (Appellant's Brief at 9). The PSA does not address the issue. "Issues not raised in the lower court cannot be raised for the first time on appeal and are considered waived." Pa.R.A.P. 302(a).

Even if the issue were not waived, Appellant cites no relevant legal authority. **See Umbelina**, **supra** at 161. Instead, Appellant cites **Fuhrhop v. Austin**, 385 Ill. 149 (Ill. 1943). (Appellant's Brief at 10). "[I]t is well-settled that this Court is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts." **Eckman v. Erie Insurance Exchange**, 21 A.3d 1203, 1207 (Pa. Super. 2011) (citations omitted). "We recognize that we are not bound by these cases; however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." **See id.** (citation omitted). **Fuhrhop,** however, does not address the issue raised in the instant appeal, *viz.*, the enforcement of the terms of the PSA.

Moreover, the PSA did not contain any reference to a choice-of-law provision. At the hearing on May 11, 2016, Appellant conceded that there was no mention of any Jamaican choice of law in the transcript of August 1, 2007, memorializing the PSA. (N.T., 5/11/16, at 16). The trial court opined

that Appellant "was precluded from arguing in favor of the application of Jamaican law to the escrowed funds due to her failure to raise the issue in any of her pleadings. Moreover, [Appellant] failed to timely and specifically object at trial to the application of the laws of the forum." (Trial Ct. Op. at 11). We discern no abuse of discretion by the trial court. *See Bennett*, *supra* at 245.

Lastly, Appellant raised the issue of whether the trial court erred by failing to find in favor of her for her claim for storage fees. (Appellant's Brief at 4). Appellant cites no legal authority for this claim, therefore it is waived. *See Umbelina*, *supra* at 161.

Even if the issue were not waived, Appellant would not be entitled to relief. As the trial court opined: "[T]he parties' August 1, 2007 PSA is devoid of any provision related to . . . storage fees." (Trial Ct. Op., at 14). At the hearing, the trial court stated as follows:

> You understand when I spoke to [Appellee] – did you hear my rendition to him of all the things you're waiving? You are waiving your right to alimony, APL, spousal support, any rights of inheritance, any other obligations for rights that you have to counsel fees or costs or anything else you're entitled to under the laws of the Commonwealth of Pennsylvania, you're waiving all those other rights except for the rights that you acquired pursuant to this agreement?

(N.T., 8/1/07, at 15).

Appellant responded: "Yes, Your Honor." (*See id.*).

The trial court found "based upon the lack of an enforceable provision in the parties' PSA, as well as the credibility of the evidence," Appellant was not entitled to relief. (Trial Ct. Op. at 16). Appellant is bound by the terms

- 8 -

of the PSA. *See Bennett*, *supra* at 245. We discern no abuse of discretion by the trial court. *See id*. Appellant's fifth issue does not merit relief.

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/18