J-A06032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF DONALD THOMAS SCHAEFER, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: FLORENCE K. SCHAEFER | : : : : : : : : | |
| | : | No. 352 WDA 2021 |

Appeal from the Order Entered February 19, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  No. 02-19-1431

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: JUNE 3, 2022**

Florence K. Schaefer appeals from the Allegheny County Orphans' Court order determining there to be a valid prenuptial agreement between Florence and her now-deceased husband, Donald Thomas Schaefer. On appeal, Florence raises five discrete arguments, which collectively assert that, in making its ruling, the lower court engaged in various abuses of discretion and/or erroneously applied the law. We affirm.

By way of background, in August 2018, Florence and Donald, both octogenarians, entered into a premarital agreement drafted by their shared attorney, Jennifer Lynch Jackson, Esq.[1] Prior to execution of this agreement,

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Jackson is a party in this appeal and resultantly has filed a participant's brief. In addition to Jackson, the estate of Donald Thomas Schaefer is, too, a party and has filed a brief.

Jackson had not met Florence and Donald nor performed any legal services for them. Moreover, Jackson did not prepare any written materials in advance of the execution date.

The record reflects multiple contradictions and ambiguities between Jackson and Florence's remembrance of events. Largely gleaned through Jackson's statements, at Florence and Donald's request, they met with Jackson for the specific purpose of obtaining that premarital agreement.[2] During their several-hour meeting, Florence and Donald indicated that they, among themselves, had materially disclosed the financial contents of their estates and sought to protect those assets from passing, in death, to the other potential spouse.[3] Their desire to proceed having full cognition of each other's assets[4] was communicated and emphasized to Jackson at several points throughout the meeting, which was conducted entirely in person. There would be no detailed accounting or discussion of Donald's assets or liabilities during

_____

[2] They would also present to Jackson a document addressing religious issues between the couple. As an addendum, they wanted it notarized and appended to the premarital agreement. In addition, they requested that Jackson prepare wills for them, which would further state that there was to be no cross inheritance. Instead, their estates were to pass to their respective children and/or heirs.

[3] Jackson would later testify that Florence expressly disclaimed wanting an asset and liability sheet attached to the premarital agreement. When it was her opportunity to do so, Florence refuted Jackson's statement.

[4] However, Florence's recollection of her preexisting knowledge at the meeting was that she had not been apprised of Donald's individual retirement accounts and stock holdings.

this meeting.

In addition to general monetary discussions, Florence and Donald stressed that, should Donald precede Florence in death, Florence was permitted to stay at his residence in the form of a life estate. This point would later become incorporated into Donald's will.

After Jackson obtained the necessary information from Florence and Donald, she explained the agreement to them, line by line. When Jackson concluded, she specifically advised Florence and Donald that they should take the unsigned agreement home and have it reviewed by an independent attorney of their choosing. Florence and Donald rejected this advice and correspondingly entered into the at-issue premarital agreement.[5]

Florence and Donald married in the month after consummation of their agreement. Approximately five months into their marriage, Donald died.

Following Donald's death, his will was probated. Thereafter, Florence filed a declaratory judgment action, asserting the agreement to be void because of Jackson's professional negligence that surrounded the construction of the agreement. Specifically, Florence identified that Jackson did not properly explain the agreement to her, failed to draft the agreement correctly, and incorrectly executed the document. Moreover, Florence sought damages

---

[5] Although the agreement indicates that each party was to be given a copy for review prior to his or her signature date, Florence and Donald signed the agreement the same day as they received it. **See** Pre-Nuptial Agreement Hearing, N.T., 2/18/21, at 100.

from Jackson due to, in her words, "malpractice." Appellant's Brief, at 10. Simultaneously, Florence sought her elective share from Donald's estate.

Ultimately, after the denials of both Florence's motion for summary judgment and Donald's estate's motion for judgment on the pleadings, the premarital agreement's validity, the subject of the case presently before this Court, would be litigated in orphans' court, with Florence advancing several bases as to why the agreement is legally insufficient under Pennsylvania law. Following a hearing, the court, *inter alia*, found Jackson's recollection of events to be credible and determined the agreement to be valid.[6]

Thereafter, Florence filed a timely notice of appeal. The relevant parties have complied with their Pennsylvania Rule of Appellate Procedure 1925 obligations, and this matter is ripe for review.

On appeal, Florence asks:

1. Did the orphans' court abuse its discretion and err as a matter of law by precluding her testimony in her case in chief by improperly applying Pennsylvania's dead man act, despite the 2005 enactment of 23 Pa.C.S.A. § 3106, which required the orphans' court to consider her independent knowledge of, and fair and reasonable disclosure to her, of property and financial obligations of her now-deceased spouse, Donald?

2. Did the orphans' court abuse its discretion and err as a matter of law by precluding her testimony by application of the dead man act, despite the orphans' court's admission of the testimony of the estate's witness (Jackson, the scrivener), who testified to disclosures and communications she had with Florence and Donald?

---

[6] The court also limited Florence's testimony in accordance with Pennsylvania's dead man act. *See* 42 Pa.C.S.A. § 5930.

3. Did the orphans' court abuse its discretion and err as a matter of law by applying a legal standard to set aside a premarital agreement cited in the court's memorandum opinion dated September 8, 2020, rather than the proper standard set forth in 23 Pa.C.S.A. § 3106, as amended in 2005?

4. Did the orphans' court abuse its discretion and err as a matter of law by finding a rebuttable presumption of validity of the premarital agreement as detailed in the court's memorandum opinion dated September 8, 2020, rather than adhering to the standard set forth in 23 Pa.C.S.A. § 3106, as amended in 2005?

5. Did the orphans' court abuse its discretion and err as a matter of law by holding that the premarital agreement was valid despite the court failing to consider the substantial weight of evidence, including the uncontradicted evidence that she had no knowledge of Donald's individual retirement account, stock assets, and property before or at the time that she executed the agreement?

*See* Appellant's Brief, at 4-5.

Given the nature of this case, we begin by recognizing that "premarital … agreements are contracts and are governed by contract law." *Stackhouse v. Zaretsky*, 900 A.2d 383, 386 (Pa. Super. 2006). On appeal from a lower court's decision to uphold a premarital agreement, we review for an abuse of discretion and/or determine whether the court has committed an error of law. *See id*. "An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." *Id*. Additionally, we "will not usurp the trial court's fact[-]finding function." *Id*.

If the language of the premarital agreement indicates that the future spouses have fully disclosed to one another the extent of their assets and

what their marital rights would be in the absence of such an agreement, it is presumed to be valid. **See Cooper v. Oakes**, 629 A.2d 944, 948 (Pa. Super. 1993).

However, a statutory mechanism exists to contest a premarital agreement. A party challenging a premarital agreement must demonstrate, by clear and convincing evidence, either: (1) he or she did not execute the agreement voluntarily; or, (2) that prior to execution, he or she was not provided a fair and reasonable disclosure of the property or financial obligations of the other party; he or she did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; *and* he or she did not have adequate knowledge of the property or financial obligations of the other party. **See** 23 Pa.C.S.A. § 3106(a) (emphasis added) (effective January 28, 2005).

Here, Florence seeks what she believes is her unfettered right to a statutory share of Donald's estate. **See** 20 Pa.C.S.A. § 2203(a) (giving a surviving spouse the "right to an elective share of one-third of the [enumerated] property[]"). However, she acknowledges that "[t]he right of election of a surviving spouse may be waived, wholly or partially, before or after marriage or before or after the death of the decedent." **Id**., at § 2207; **see also** Appellant's Brief, at 17.

Falling under the auspice of her first issue, Florence contends that the at-issue agreement does not contain an "expressly stated surrender of right of election." Appellant's Brief, at 18. Florence insinuates, at least in part, that

because the agreement makes no mention of "statutory rights" and contains no language unambiguously disclaiming her elective share of the estate, it cannot serve as a basis to prevent her from obtaining that share. ***See In re Estate of Hartman***, 582 A.2d 648, 651 (Pa. Super. 1990) (remarking that a premarital agreement is valid "only if a full and fair disclosure of the decedent's financial condition and the statutory rights being waived … was made").[7]

Florence also avers that, prior to signing the agreement, she never received the legally required financial disclosures from Donald. ***See Paroly v. Paroly***, 876 A.2d 1061, 1067 (Pa. Super. 2005) ("[W]here the circumstances indicate that a spouse has knowledge of the general value of the couple's assets, an agreement will be upheld, especially where … the agreement recites that a fully and fair disclosure was made."). Stated differently, Florence submits that "[t]he record here is devoid of circumstances indicating that [she] had knowledge of the general value of the couple's assets." Appellant's Brief, at 22 (identifying Florence's lack of knowledge as to Donald's stock and individual retirement account holdings at the point when the agreement was signed).

Most importantly, however, ***Hartman***, as well as many of the other cases relied upon by the estate and lower court, was decided prior to the

---

[7] Florence also illuminates that ***Hartman***, as a case relied upon by the estate, featured a situation where the scrivener, in fact, orally discussed the parties' assets prior to execution and indicated as much in the agreement, stating that each party had "made a complete disclosure to the other of his or her financial condition." 582 A.2d at 651.

enactment of Section 3106. Interpretation of that Section and its resulting applicability is the crux of Florence's present appeal. In short, when the lower court prevented Florence from testifying under the dead man act, it was "contrary to the intent of the legislature as evidenced by the clear language of [Section] 3106." Appellant's Brief, at 24 (asserting, further, that utilization of the dead man act "to preclude testimony of the surviving spouse would be to find that surviving spouse can never prevail under [Section] 3106[] because only a surviving spouse can offer the affirmative evidence required under the statute").

In relevant part, the agreement between Florence and Donald states that:

> Parties acknowledge that they have been advised that by virtue of their marriage each will have an interest in the other's estate or any intestacy. It is the intention of the parties that each party will waive any interest that he or she may have in the estate or any intestacy of the other.

Pre-Nuptial Agreement, 8/20/18, at ¶ 5.01. Furthermore, the agreement establishes that each party "has given the other a full and complete disclosure of his or her property and income as of the date of this [a]greement." *Id*., at ¶ 2.02.

Except as otherwise provided by statute or in our rules of evidence, every person is competent to be a witness. *See* Pa.R.E. 601(a). One statute in particular, Pennsylvania's dead man act, provides that

> in any civil action or proceeding, where any party to a thing or contract in action is dead … neither any surviving or remaining

> party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased … shall be a competent witness to any matter occurring before the death of said party[.]

42 Pa.C.S.A. § 5930. With the onus being on the party seeking to set aside a premarital agreement and in the event the other party becomes deceased, under a rote application of the dead man act, availing oneself of Section 3106 becomes a difficult task, as he or she, absent limited exceptions, would be foreclosed from providing testimony on anything relevant to the creation of the agreement.

It is uncontested that Donald's estate has an interest in the present matter. In addition, in seeking her elective share, Florence's interest is adverse to that of the estate. The dead man act would, therefore, disqualify Florence from testifying in this domain. ***See Hartman***, 582 A.2d at 652 ("The Pennsylvania Supreme Court has consistently held that the Dead Man's Act precludes testimony by the surviving spouse against antenuptial … agreements."). Here, faced with a similar set of facts as ***Hartman*** wherein that appellant claimed he did not understand his premarital agreement nor have the opportunity to review it with counsel, the trial court prohibited Florence from testifying as to discussions that she had with Donald prior to the couple's meeting with Jackson. ***See id***. (ascertaining that "the testimony [the appellant] sought to present concerned [an] antenuptial agreement, a civil contract entered into with his wife during her lifetime. Testimony regarding a contractual relationship between the decedent and surviving

spouse is clearly proscribed under the Dead Man's Act[]").

Florence has not provided any salient reason for this Court to overlook the plain text of the dead man act. Although it was enacted more recently than the dead man act, Section 3106 *does not* provide any exception that would obviate that act's application. Instead of designating what constitutes competent evidence or allowing for the circumvention of the dead man act, Section 3106 merely prescribes the path a party must take to set aside a premarital agreement. By overlooking the dead man act and making it permissible for unbound testimony from a living party, it would be tantamount to creating a new evidentiary right for those seeking to not be bound by a premarital agreement. Instead, we see no reason to conclude that the lower court abused its discretion or committed an error of law when it prohibited Florence from testifying to events prior to the meeting with Jackson.

To the extent that Florence asserts that the agreement did not sufficiently indicate that she was waiving her statutory rights, presumably seeking some sort of specific verbiage to that effect, she has provided no support for the proposition that the literal language used in the present agreement is deficient. The agreement clearly contemplates waiver of a right to the other party's estate. As to whether Florence received the legally required financial disclosures from Donald, the court found Jackson to be credible when she unequivocally indicated that Florence and Donald had materially discussed all of Donald's assets in a way that was satisfactory for

both signators to the premarital agreement and that Florence wanted no corresponding list of assets and debts prepared. We reiterate that the burden of proof is on the party seeking to set aside a premarital agreement by clear and convincing evidence. While, perhaps, it would have been more prudent to delve, at least cursorily, into those assets at the meeting, we find no abuse of discretion or error of law in the court's determination, given Jackson's clear testimony as to Florence's level of financial knowledge and Florence's then-desire to not delve into the specifics of Donald's assets.

In her second issue, which is intrinsically related to her first, Florence claims that by permitting Jackson to testify, the court inherently "opened the door" for Florence's testimony regardless of the prohibition contained in the dead man act. In other words, Florence "should have been permitted to fully testify as to the August 20, 2018 meeting at attorney Jackson's office without limitation." Appellant's Brief, at 27. Instead, Florence was only allowed to "testify to the very limited scope to rebut the testimony of attorney Jackson." *Id*.

Jackson, among other things, indicated that, at the meeting, Donald and Florence conveyed to her that they had discussed assets prior to the agreement's execution date. Correspondingly, despite the dead man act, the court permitted Florence to testify to matters in which Jackson was a witness, namely the meeting between Jackson, Florence, and Donald. *See* 42 Pa.C.S.A. § 5933(a); *see also In re Estate of Cecchine*, 485 A.2d 454, 459 (Pa.

Super. 1984) ("[T]he surviving party is competent only for the purpose of contradicting the matters testified to by the living witness.") (citation omitted). Explicitly, the court allowed inquiry of Florence into whether Jackson accurately summarized what had happened on the date of execution, expressly allowing for rebuttal of any of Jackson's statements. *See* N.T., 2/18/21, at 113.

To Florence, when the attorney representing Donald's estate asked her what the purpose of her visit with Jackson was, that question was "outside of the scope of her rebuttal testimony and touched on matters for which the trial court would not let her testify[.]" *Id*., at 28. This "ask" made her competent to testify on her own behalf as to all relevant matters.

We disagree and find that Florence has failed to demonstrate that this sole question on cross-examination allowed her testimony to, thereafter, exceed the scope of Section 5933. Preliminarily, we note that Florence did not make a contemporaneous objection to this question. Moreover, it is unclear whether this discrete issue is fairly suggested by her concise statement of matters complained of on appeal. *See* Trial Court Opinion, 8/3/21, at 3 ("It is difficult, one may say, impossible to ascertain what precisely Florence complains about here."). Consequently, this issue has arguably been waived. *See, e.g.*, *Commonwealth v. Butler*, 812 A.2d 621, 634 (Pa. 2002).

Even if it is not waived, we find no merit to Florence's claim. After she was asked, on direct examination, questions about what she knew at the time

of the meeting, there was a cross-examination question seeking to define the overall point of the meeting. Such a question was not only germane to and within the scope of what Jackson had already stated, but it was also relevant to issues contained within the case. *See* Pa.R.E. 611(b). As the court allowed her to testify to events on the execution date, Florence fails to elaborate or provide support for how an inquisition into the meeting's purpose transcends the bounds of either Jackson's testimony or the questions asked of her on direct examination. Consequently, her claim warrants no relief.

In Florence's third issue, she contends that the court did not employ the proper standard, as defined in Section 3106, in reaching its conclusion that the premarital agreement was enforceable. Distilled down, Florence avers that Section 3106 abrogated *Simeone v. Simeone*, 581 A.2d 162 (Pa. 1990), insofar as that Section does not contain the presumption of full disclosure of financial assets that follows when an agreement's language indicates the same. *See* Appellant's Brief, at 31-32. Accordingly, "the standard set forth by the trial court relying on *Simeone* does not comport with the state of the law in the Commonwealth of Pennsylvania." *Id*., at 32.

While Florence is correct in that Section 3106 does not have any presumption of validity contained within its text, the burden of proof, at the heightened standard of clear and convincing evidence, is on the party seeking to render the agreement unenforceable. *See* 23 Pa.C.S.A. § 3106. Other than

citing to the comment that corresponds with Section 3106,[8] Florence has not offered any basis to depart from *Simeone*.

Although it was in the context of a marital settlement agreement, this Court relied upon *Simeone* in *Bennett v. Bennett*, 168 A.3d 238, 245 (Pa. Super. 2017). Therein, we reinforced the notion that "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *Bennett*, 168 A.3d at 245, *quoting* *Simeone*, 581 A.2d at 165. To that end, "[i]f an agreement provides that full disclosure has been made, a presumption of full disclosure arises." *Id*. (stating, further, that "an agreement is valid even if it does not contain financial disclosure itself and can be upheld if it merely recites that such disclosure has been made[]") (citation omitted).

Here, similar to *Bennett*, there is a disclosure recital contained within the agreement. That said, we agree with Florence that Section 3106 does not specify fraud, misrepresentation, or duress as ways to attack a premarital agreement. However, as has been stated, *supra*, the relevant part of that Section's verbiage is derived from *Simeone*'s approach. Accordingly, in seeing no basis to depart from *Simeone's* presumption of full disclosure and

---

[8] That comment, in relevant part, states: "Section 3106 is new. Currently, premarital agreements are governed by case law." 23 Pa.C.S.A. § 3106, Comment. However, it does not provide for any kind of specific deviation from prior case law. In fact, the comment establishes that most of its text "encompasses the approach of *Simeone*." *Id*.

given that the very language of the text places the burden on the agreement's challenger, Florence would have to demonstrate by clear and convincing evidence, *inter alia*, that she was not provided a fair and reasonable disclosure of Donald's assets and did have adequate knowledge of the same. **See** 23 Pa.C.S.A. § 3106. As the court accepted Jackson's version of what had happened on the date of execution, wherein she unambiguously indicated that Florence was fully cognizant of Donald's assets and wanted to proceed with the premarital agreement, Florence failed to meet her burden.

In Florence's fourth claim, which is in many ways similar to her third, she contends that the court's "erroneous application of a presumption of 'validity,' contrary to [Section] 3106, created a burden upon [her] … that did not exist." Appellant's Brief, at 33. Instead, Florence "merely had to establish the elements" as outlined in Section 3106's subsection (a)(2). **Id**.

Even accepting there to be no literal presumption contained in Section 3106, Florence appears to be arguing a semantical distinction. The plain text of Section 3106 clearly designates that the burden is placed on the individual challenging the premarital agreement. Anything less than a demonstration by clear and convincing evidence compels the court to maintain the premarital agreement, as written. Therefore, it strains credulity to interpret Section 3106 as anything other than creating a presumption in favor of validity. Florence had no additional burdens independent of those already contained in Section 3106. Accordingly, she is due no relief.

In her fifth and final issue, Florence suggests that the court's determination that the premarital agreement was valid was against the substantial weight of the evidence. Florence bolsters this position by identifying that there was no disclosure of Donald's assets during the meeting with Jackson. "Even if attorney Jackson's testimony is accepted as true, it does nothing to establish the substance of disclosure of property and financial obligations." Appellant's Brief, at 35. Florence asserts that the only testimony of record that is directly on point to whether Donald disclosed his assets is Florence's denial that she knew of his stocks or individual retirement account. As no evidence to the contrary of this proposition was presented, Florence established the relevant requisite elements of Section 3106.

Despite Florence's intimation, Jackson directly testified that, at several points during the meeting, Jackson confirmed that Donald and Florence disclosed their assets and debts to each other. *See* N.T., 2/18/21, at 83. Jackson stated that "Florence did not want a list prepared of assets and debts. [The three] talked about it at length and went through it numerous times. [Florence] said that they had discussed it among themselves and that there were both satisfied with their discussions[.]" *Id*., at 85. The agreement itself also designates that the parties were given a full and complete disclosure of each other's assets, that the parties had the ability to seek out independent counsel for review of the agreement, that they were waiving any interest in each other's estates, and that the agreement was the complete understanding

of the parties. Clearly, then, there *is* evidence of record, both in the form of testimony and documentary, indicating that Florence knew of Donald's assets.

Instead, Florence is effectively asking the court to reweigh the evidence as utilized and thereafter ruled upon by the lower court.[9] "Our standard of review of an orphans' court's decision is deferential." ***In re Estate of Strahsmeier***, 54 A.3d 359, 363 (Pa. Super. 2021) (citation omitted). "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of discretion." ***Id***., at 363-64.

Here, the lower court found Jackson to be credible and Florence, at a minimum, to be not credible insofar as she needed to demonstrate her position by way of clear and convincing evidence. Jackson's testimony, when coupled with the language of the agreement itself, serves to indicate that Florence was "provided a fair and reasonable disclosure" and had "adequate knowledge" of Donald's assets. ***See*** 23 Pa.C.S.A. § 3106(a)(2)(i), (iii). Consequently, the lower court did not commit and error of law or abuse its discretion when it ascertained that the evidence presented by Florence failed to meet her burden to set aside the agreement.

_____

[9] To the extent Florence attempts to, instead, define the legal parameters of what actually constitutes insufficient knowledge in a successful Section 3106 challenge, she has not articulated with any specificity what would have been necessary other than emphasizing her original position, which refuted that she was ever apprised of Donald's assets and indicated that none of his particular assets were discussed during the meeting with Jackson.

As we find no basis to reverse the orphans' court's determination that the premarital agreement between Florence and Donald is valid and enforceable, we are constrained to affirm the lower court's order determining the same.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2022