J-S37016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES ARTILLIO JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERESA ARTILLIO | : | No. 158 EDA 2020 |

Appeal from the Order Entered December 19, 2019
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2015-60295

BEFORE: SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED DECEMBER 16, 2020**

Appellant Charles Artillio, Jr., appeals from the order creating a constructive trust for undisclosed marital assets in favor of Appellee Teresa Artillio. On appeal, Appellant contends the trial court lacked authority to create a constructive trust and erred by finding that the record supported the creation of a constructive trust. We affirm.

We adopt the facts set forth in the trial court's opinion. *See* Trial Ct. Op., 3/4/20, at 1-6, 13-26. We add that the parties' divorce complaint requested incorporation of the parties' property settlement agreement (PSA) into the divorce decree. *See* Compl. in Divorce, 2/25/15; *see also* Trial Ct.

Op. at 1-2. The certified record also reflects the filing of an inventory of marital property.[1] ***See*** Compl. in Divorce; ***see also*** R.R. at 91a.

Subsequently, Appellee filed a petition for special relief, which essentially asserted that Appellant intentionally concealed marital assets. Appellee's Pet. for Special Relief for Constructive Tr. & Accounting, 2/25/19, at 10-11. Appellee asserted that as a result of Appellant's material misrepresentations, Appellant induced her to sign the PSA. ***Id.*** at 7. Appellee alleged that the trial court has "full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require . . . ." ***Id.*** at 11 (unpaginated) (quoting 23 Pa.C.S. § **3323**(f)).

On that basis, Appellee's petition requested the following relief:

a. [Appellant] shall, within ten (10) days of the date of the court's order, file with the court a verified inventory and appraisement of all financial accounts held by [Appellant] or any financial account that [Appellant] has any interest for the past five years to present, substantially in the form provided by [Pa.R.Civ.P.] 1920.75.

---

[1] Specifically, the inventory was stapled in the middle of the parties' divorce complaint, in between a document titled "report of social security number" and the PSA. ***See*** Compl. in Divorce. The trial court similarly noted that an inventory was filed and it was "on top of the marital property agreement." R.R. at 292a-93a. We may cite to the reproduced record for the parties' convenience.

b. All of the entities which [Appellant] failed to disclose to [Appellee] shall be placed in a constructive trust and discovery shall be ordered to be completed within ninety days to determine the true value of the marital estate and to compel [Appellant] to tender to [Appellee] her equitable marital share of the full marital estate and to award all reasonable counsel fees and other costs in connection with the petition; and granting [Appellee] such other further relief as the court deems equitable and just[,] including interim counsel fees.

*Id.* at 12 (unpaginated).

On December 12, 2019, the trial court granted relief, and we quote the order in relevant part as follows:

Pursuant to **Section 3505(d)**[2] of the Pennsylvania Divorce Code, 23 Purdon's Consolidated Statutes Annotated, a constructive trust is established for all undisclosed assets/businesses including, but not limited to the following: . . .

\*    \*    \*

[The trial court designated an attorney as trustee of the constructive trust and stated the trustee would be paid].

[Appellant] shall provide to Trustee and opposing counsel within thirty (30) days of the date of this Order, an accounting of the above businesses which shall include, at minimum the following: date established; names and addresses of all partners/shareholders; percentage of [Appellant's] interest in said property; if no longer in existence, then date it was dissolved; copies of all tax returns for all businesses from 2012 until the present; name of [all of the] officers; and any other information requested by the Trustee.

None of the above assets/businesses shall be disposed of, alienated or further encumbered without written notice given to

---

[2] As we noted earlier, Appellee's petition requested relief under Section 3323(f), and **not** under Section 3505(d).

> the Trustee and all parties at least ten (10) days in advance of any action involving the assets/businesses.
>
> This matter is referred to the Master's Office for further oversight in accordance with state and local procedure. There is an outstanding request by [Appellee] for attorney's fees. [Appellee] is required to file any pleadings necessary, under state or local rule, to have the matter handled by the Master's Office. The Master's Office shall deal with the division of assets and attorney's fees.

Order, 12/12/19, at 1-2 (emphasis added). Appellant timely appealed on January 6, 2020, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

On January 28, 2020, this Court issued a rule to show cause why Appellant's appeal should not be quashed because the trial court's December 12, 2019 order, which referred "the matter to the Master's Office for division of the listed assets and for disposition of [A]ppellee's petition for attorney's fees," was not a final order. Order, 1/28/20. On February 6, 2020, Appellant filed an answer asserting that because the trial court ordered the creation of a constructive trust under 23 Pa.C.S. § 3505(d), the order was appealable as of right under Pa.R.A.P. 311(a)(4).[3] Appellant's Answer to

---

[3] We note, however, that in his appellate brief, Appellant argues that the order was invalid because Appellee failed to request relief under Section 3505(d). **See, e.g.**, Appellant's Brief at 35.

- 4 -

Rule to Show Cause, 2/6/20, at 2-3. On February 7, 2020, the Court discharged its rule and referred the issue to this panel.[4] Order, 2/7/20.

**Whether Appellant Could Properly Take an Interlocutory Appeal**

Before quoting Appellant's issues, we address our appellate jurisdiction, which we may raise *sua sponte*. **See Grun v. Grun**, 496 A.2d 1183, 1185 (Pa. Super. 1985).

Pennsylvania Rule of Appellate Procedure 311(a)(4) states:

**(a) General rule.—**An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

(4) *Injunctions.*—An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:

(i) Pursuant to 23 Pa.C.S. §§ 3323(f), 3505(a); or

(ii) After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or

_____

[4] On February 12, 2020, Appellee filed an application to quash on the basis that Appellant was appealing an interlocutory order not appealable as of right. Appellee's Appl. to Quash Appellant's Interlocutory Appeal, 2/12/20. Appellee argued that the trial court's December 12, 2019 order was "an interlocutory order which [was] not appealable under the applicable statutes and rules." *Id.* at 2. Appellee reasoned that the order "contemplate[d] additional action by the parties, the appointed Trustee and the supervision of" the master, subject to the trial court's approval. *Id.* at 6. Appellant did not file a response. On March 10, 2020, this Court denied Appellee's motion to quash without prejudice to re-raise the issue in her appellate brief or a new application. Order, 3/10/20. Appellee did not re-raise the issue. In any event, as we explain below, we have appellate jurisdiction.

> mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

Pa.R.A.P. 341(a)(4).

As quoted above, Rule 311(a)(4) lists two statutory exceptions: § 3323(f) and § 3505(a). Section 3323(f) of the Domestic Relations Code states:

> **(f) Equity power and jurisdiction of the court.**—In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S. § 3323(f).

We quote Section 3505(a) and 3505(d), of which the instant trial court cited the latter:

> **(a) Preliminary relief.**—Where it appears to the court that a party is about to leave the jurisdiction of the court or is about to remove property of that party from the jurisdiction of the court or is about to dispose of, alienate or encumber property in order to defeat equitable distribution, alimony pendente lite, alimony, child and spousal support or a similar award, an injunction may issue to prevent the removal or disposition and the property may be attached as prescribed by general rules. The court may also issue a writ of ne exeat to preclude the removal.
>
> *    *    *
>
> **(d) Constructive trust for undisclosed assets.**—If a party fails to disclose information required by general rule of the Supreme Court and in consequence thereof an asset or assets with a fair market value of $1,000 or more is omitted from the final distribution of property, the party aggrieved by the

nondisclosure may at any time petition the court granting the award to declare the creation of a constructive trust as to all undisclosed assets for the benefit of the parties and their minor or dependent children, if any. The party in whose name the assets are held shall be declared the constructive trustee unless the court designates a different trustee, and the trust may include any terms and conditions the court may determine. The court shall grant the petition upon a finding of a failure to disclose the assets as required by general rule of the Supreme Court.

23 Pa.C.S. § 3505(a), (d).

Instantly, the trial court's order created a constructive trust and enjoined Appellant from alienating any assets that were to be transferred into the trust, which is a form of injunctive relief. *See* Order, 12/12/19; *see generally Santoro v. Morse*, 781 A.2d 1220, 1223 n.1 (Pa. Super. 2001) (noting interlocutory appeal as of right may be taken from order granting preliminary injunction and creating constructive trust). Rule 311(a)(4) permits an interlocutory appeal as of right from an order granting an injunction unless the injunction was created under either Sections 3323(f) or 3505(a). *See* Pa.R.A.P. 311(a)(4). Here, the trial court's order explicitly created a constructive trust, which is relief within the scope of Section 3505(d). Order, 12/12/19. We therefore do not need to examine whether the trial court could also have created a constructive trust under Section 3323(f) or 3505(a) for the purpose of determining our appellate jurisdiction. *See* Pa.R.A.P. 311(a)(4); 23 Pa.C.S. §§ 3323(f), 3505(a). Accordingly, Appellant could properly take an interlocutory appeal as of right from the order at issue. *See* Pa.R.A.P. 311(a)(4).

We therefore address the merits, and Appellant raises the following issues on appeal:

1. Was it an error of law and an abuse of discretion for the trial court to deny Appellant's "motion for demurrer" requesting the dismissal of the petition for special relief ("PFSR") filed by [Appellee], as Appellee was not legally entitled to the relief sought via the PFSR, that being the creation of a constructive trust pursuant to 23 Pa.C.S. [§] 3505(d)?

2. Was it an error of law and abuse of discretion to grant the relief sought by Appellee in the PFSR, that being the creation of a constructive trust pursuant to 23 Pa.C.S. [§] 3505(d), due to: a) the absence of evidence that Appellant violated any general rule of the Supreme Court by failing to disclose information to Appellee; and b) the failure of either party to file a count sounding in equitable distribution pursuant to 23 Pa.C.S. [§] 3502 in the underlying divorce action?

3. Was it an abuse of discretion for the trial court to find that assets outlined repeatedly and in detail within jointly filed federal and state income tax returns that Appellee signed and verified under penalty of perjury as being accurate before such time as the parties' divorce[] were "undisclosed" to Appellee?

Appellant's Brief at 10-11.

## Whether There Was Abuse of Discretion in the Creation of the Constructive Trust

In support of his first issue, Appellant contends that Appellee's petition for special relief did not specifically cite 23 Pa.C.S. § 3505(d) in support of a creation of a constructive trust. *Id.* at 31. Appellant reasons that because Appellee did not explicitly cite Section 3505(d), the trial court should not have granted it. *Id.* Regardless, Appellant argues, Appellee failed to fulfill the requirements for requesting relief under Sections 3105(a) or 3323(f) because no party has alleged the PSA was breached. *Id.* at 31-32.

- 8 -

The standard of review follows:

We review a trial court's decision to grant [or deny] special relief in divorce actions under an abuse of discretion standard . . . .

However, our deference [to the trial court] is not uncritical. An order may represent an abuse of discretion if it misapplies the law. It is therefore our responsibility to be sure that in entering its order the court correctly applied the law. An order may also represent an abuse of discretion if it reaches a manifestly unreasonable result. This will be the case if the order is not supported by competent evidence. It is therefore also our responsibility to examine the evidence received by the court to be sure that the court's findings are supported by the evidence. Although we will accept and indeed regard ourselves as bound by the court's appraisal of a witness' credibility, we are not obliged to accept a finding that is not supported by the evidence.

When reviewing questions of law, our scope of review is plenary.

***Conway v. Conway***, 209 A.3d 367, 371 (Pa. Super. 2019) (citation omitted and formatting altered).

Because Appellant also filed a motion for demurrer with respect to Appellee's petition for special relief, we state the applicable standard of review as well:

A demurrer tests only whether, as a matter of law, the pleaded allegations may entitle the pleader to relief. To answer that question, the pleader's factual allegations are accepted as true; because there are no other "facts" before the court, the trial court has no basis to assume otherwise. And because neither party has had any opportunity to present evidence showing what the facts actually are, the law precludes dismissal unless it is "clear and free from doubt" that no relief may be obtained under the pleader's allegations.

***C.G. v. J.H.***, 172 A.3d 43, 54-55 (Pa. Super. 2017) (citations omitted).

Generally, the trial court must have some legal authority for issuing a particular order. *See In re Q.R.*, 199 A.3d 458, 470 (Pa. Super. 2018) (reasoning that a trial court order that lacks statutory authority is void *ab initio*). For example, in *Annechino v. Joire*, 946 A.2d 121 (Pa. Super. 2008), this Court resolved an appeal from the trial court's order granting the appellee's petition to enforce a PSA. *Annechino*, 946 A.2d at 122. On appeal, the appellant argued that because the "agreement was not incorporated and the pleadings did not include a count for equitable distribution, the [trial] court [did] **not have the authority** to enforce the [PSA] and [the appellant's] only remedy [was] a separate civil action in equity." *Id.* (emphasis added). The *Annechino* Court disagreed with the appellant, reasoned that Section 3105(a)[5] permits enforcement of a PSA "(a) regardless or whether equitable distribution was pled, and (b) regardless of whether an agreement has been merged or incorporated into the divorce

---

[5] Section 3105(a) states:

> **(a) Enforcement.—**A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S. § 3105(a).

decree." ***Annechino***, 946 A.2d at 122; ***see Peck v. Peck***, 707 A.2d 1163, 1164 (Pa. Super. 1998).[6]

The ***Annechino*** Court additionally noted that Section 3323(f) "expressly authorizes the court to enter orders requiring either party to act or refrain from acting as equity and justice require." ***Annechino***, 946 A.2d at 124 (citation and footnote omitted). The ***Annechino*** Court reasoned that because the trial court had personal jurisdiction over the parties, "[S]ection 3323(f) is a catch-all provision, granting not only broad enforcement powers, but 'full equity and jurisdiction' to issue orders necessary to protect the interests of the parties and effectuate economic justice and insure the fair and just settlement of the parties' property rights." ***Id.*** (citation and footnote omitted). Notwithstanding Section 3323(f), the ***Annechino*** Court

---

[6] In ***Peck***, the Court addressed an appeal from an order denying a petition to modify alimony. ***Peck***, 707 A.2d at 1163. In resolving the appeal, the ***Peck*** Court noted as follows:

> Section 3105 of the Divorce Code now permits **enforcement** of both merged and unmerged property settlement agreements under the Code. However, the amendment neither adds to nor subtracts from the substantive rights of the parties under their property settlement agreement; rather, it merely provides an additional procedural vehicle for the **enforcement** of their respective rights under their property settlement agreement. Thus, a party who utilizes the enforcement power under Section 3105 still preserves his or her right to file a civil or equitable action on the property settlement agreement itself.

***Peck***, 707 A.2d at 1164 (emphases in original, citations omitted, and formatting altered).

concluded that Section 3105(a) authorized the trial court to enforce the PSA. *See id.*

Here, Appellant's petition cited Section 3323(f) but failed to cite Section 3505(d), the exact Section under which the trial court granted relief. *See* Order, 12/12/19, at 1; Appellee's Pet. for Special Relief for Constructive Tr. & Accounting, 2/25/19, at 11. Appellant, similar to the appellant in *Annechino*, alleged the instant trial court lacked any legal authority to enforce the PSA. *Cf. Annechino*, 946 A.2d at 122. Like the *Annechino* Court, however, we agree that Section 3323(f)'s "broad enforcement powers" permitted the trial court to issue relief under Section 3505(d), notwithstanding Appellee's failure to specifically cite to Section 3505(d). *See id.*

But even if Appellee had not cited Section 3323(f) in her petition, under *Annechino*, the trial court had an alternative basis under Section 3105(a) to enforce the PSA. *See* 23 Pa.C.S. § 3105(a); *Annechino*, 946 A.2d at 122. As for Appellant's contention that neither party asserted that the PSA was violated, as we noted above, Appellee contended that Appellant fraudulently induced her to sign the PSA by concealing marital assets. Appellee's Pet. for Special Relief for Constructive Tr. & Accounting at 7. For these reasons, the trial court did not abuse its discretion. *See Conway*, 209 A.3d at 371; *C.G.*, 172 A.3d at 54-55.

**Appellant's Second Issue**

Having resolved Appellant's first issue, we summarize Appellant's two interrelated arguments in support of his second issue. Appellant's first argument is that Appellee failed to meet her burden of proof of establishing a violation of any Rule of our Supreme Court for creating a constructive trust under Section 3505(d).[7] Appellant's Brief at 33, 34-35 (asserting, "it is an absolute legal impossibility for a court . . . to place into constructive trust assets that were undisclosed to one of the parties in a divorce action unless that failure to disclose the same by the other party was also in direct violation of a specific Pa.R.C.P."). In Appellant's view, neither Appellee nor the trial court can establish that he violated any Pennsylvania Rule of Civil Procedure by failing "to disclose assets to Appellee during the course of their divorce action." *Id.* at 37.

Appellant's second argument in support of his second issue is that because neither party requested equitable distribution, he could not have violated Rule 1920.33 as the trial court held. *Id.* at 40 (contending, "[e]quitable distribution is not at issue in the instant matter, as it was never

_____

[7] We quoted Section 3505(d) earlier, which states in relevant part, "[i]f a party fails to disclose information required by general rule of the Supreme Court," the trial court may create a constructive trust. *See* 23 Pa.C.S. § 3505(d).

ple[d]."). Appellant asserts that he never filed an inventory such that Rule 1920.33 would be triggered. **Id.** at 41.[8]

In any event, Appellant posits that even if an inventory was filed, it was invalid. **Id.** at 41-42. Specifically, Appellant argues that the inventory did not comply with all of the requirements set forth in Rule 1920.75, and it was improperly dated two days after the PSA's effective date and one day after the parties executed the PSA. **Id.** at 42. Finally, even if the inventory was valid, Appellant asserts that Appellee no longer has any right to equitable distribution because any such right was extinguished when the trial court entered the divorce decree. **Id.** at 42-43 (arguing, "the parties' respective rights to equitable distribution and discovery were forever terminated at the entry of the divorce decree in their action in July of 2016, and the [t]rial [c]ourt cannot revive them in the matters brought before it by Appellee.").

_____

[8] We quote Appellant's argument in relevant part as follows:

> First, neither party ever filed an inventory, and the docket of the [trial court] is devoid of any reference to the filing of or the acceptance by the prothonotary of an inventory from either party. Any assertion by Appellee that among the boilerplate documents Appellant purchased online and filed in a *pro se* capacity was a document that is similar to a formal inventory is simply untrue.

Appellant's Brief at 41.

- 14 -

We previously stated the abuse-of-discretion standard of review. *See*

*Conway*, 209 A.3d at 371. Rule 1920.33 states:

> (a) If a pleading or petition raises a claim for equitable division of marital property under Section 3502 of the Divorce Code, the parties shall file and serve on the other party an inventory, which shall include the information in subdivisions (1) through (3) and shall be substantially in the form set forth in Pa.R.C.P. No. 1920.75. . . .
>
> The inventory shall set forth as of the date of separation:
>
> (1) a specific description of the marital assets which either or both parties have a legal or equitable interest, . . . and the marital liabilities, which either party incurred individually or jointly with another person . . .
>
> (2) a specific description of the assets or liabilities claimed to be non-marital and the basis for such claim; and
>
> (3) the estimated value of the marital and non-marital assets and the amount due for each marital and non-marital liability.

Pa.R.C.P. 1920.33(a). We need not quote Rule 1920.75, but observe that the Rule does not require strict compliance. *See* Pa.R.C.P. 1920.75 (noting the "inventory required by Pa.R.C.P. No. 1920.33(a) shall be **substantially** in the following form" (emphasis added)).

We previously summarized this Court's decision in *Annechino*, in which the appellant contended the trial court lacked authority to enforce the PSA because no party pled equitable distribution. *See Annechino*, 946 A.2d at 122. As we stated previously, the *Annechino* Court held that the trial court had authority to enforce a PSA even if the pleadings did not raise a claim for equitable distribution. *See id.*

In ***Bennett v. Bennett***, 168 A.3d 238 (Pa. Super. 2017), the former spouses executed a PSA that was incorporated but not merged into the divorce decree.  ***Bennett***, 168 A.3d at 241.  Subsequently, the appellee filed a petition to impose a constructive trust, which alleged that the appellant failed to disclose a marital asset.  ***Id.***  In response, the appellant filed a demurrer, claiming that a Section 3505(d) constructive trust required "the filing of an inventory during the equitable distribution process, and, in the **absence** of that form, the statutory provision is inapplicable."  ***Id.*** at 242 (emphasis added).  The trial court overruled the demurrer, held an evidentiary hearing, and granted the appellee's petition.  ***Id.*** at 242-43.  The appellant appealed.

> In resolving the appeal, the ***Bennett*** Court reasoned as follows:
>
> By its terms, § 350[5](d) does not require a party to demonstrate that the failure to disclose an asset was deliberate or intentional.  This is because the provision is triggered by a breach of a parties' affirmative obligation to "disclose information required by general rule of the Supreme Court," *e.g.*, an inventory under Rule 1920.33, which did **not** occur in this case.  However, mindful that parties to property settlement agreements are entitled to enforcement measures set forth in the Divorce Code, ***see*** [23 Pa.C.S.] § 3105(a), we find that the provision's silence as to disclosure clauses did not preclude [the appellee] from invoking this remedial provision. ***Cf. Creeks v. Creeks***, 422 Pa. Super. 432, 619 A.2d 754 (1993) (where husband failed to include asset in inventory pursuant to agreement's disclosure clause, the breach triggers action for constructive trust).

***Id.*** at 244 (emphasis added).  In sum, the absence of an inventory did not bar enforcement of the PSA under Section 3105.  ***See id.***

Instantly, the trial court could enforce the PSA regardless of "whether equitable distribution was pled." *See Annechino*, 946 A.2d at 122. Further, the trial court's authority to enforce the PSA did not end after it entered the divorce decree. *See, e.g.*, *id.* at 124; *accord* 23 Pa.C.S. § 3505(d) (permitting a party to petition the court "at any time" for a constructive trust).

Moreover, Appellant did file an inventory as part of the complaint for divorce. *See* Compl. in Divorce. As we stated above, it was stapled in between the PSA and a document verifying the parties' social security numbers. *See id.* Because the inventory did not completely list the parties' marital assets, it violated Rule 1920.33, which would justify the trial court's imposition of a constructive trust. *See* Pa.R.C.P. 1920.33; 23 Pa.C.S. § 3505(d).

But even if the inventory was invalid, as Appellant claims, the *Bennett* Court held that the trial court has authority to enforce a PSA even in the **absence** of an inventory. *See Bennett*, 168 A.3d at 244. The authority to enforce includes the creation of a constructive trust. *See id.* (enforcing PSA notwithstanding absence of inventory). Assuming the instant inventory was invalid, the trial court retained the authority to enforce the PSA. *See id.* Finally, we note that despite Appellant's procedural challenges to the trial court's imposition of a constructive trust, the trial court has "full equity power and jurisdiction" to issue any orders it deems necessary "as equity

and justice require."[9]  **See** 23 Pa.C.S. § 3323(f).   For these reasons,

Appellant did not establish the trial court's abuse of discretion.  **See**

**Conway**, 209 A.3d at 371.

## Summary of Background for Appellant's Final Issue

Before summarizing Appellant's argument for his final issue, we state

the following as background.  The PSA, with respect to the disposition of the

parties' marital property, included the following clause:

> OTHER PROPERTY.  The parties represent and acknowledge that
> there is **no other property**, real or personal, which is owned
> jointly or in which both have an interest, and hereafter neither
> party will make any claim to any item which is in the possession
> of the other.   Each party shall own, have and enjoy
> independently of any claim or right of the other, all items of
> property, real or personal, of every kind now or hereafter owned
> or held by him or her with full power to dispose of same as fully
> and effectively in all respects and for all purposes as if he or she
> were unmarried.

R.R. at 631a (emphasis added).

The PSA also included the following clause, which was omitted from

the copy of the PSA that was filed with the trial court prior to entry of the

divorce decree:

> **RELIANCE ON MATERIAL REPRESENTATIONS**
>
> [Appellant] and [Appellee] acknowledge that in entering into this
> Agreement,  each  has  been  induced  to  and  is  directly  and

---

[9] It follows that Appellant's hypertechnical challenges, even if meritorious, would not establish an abuse of discretion by the trial court, given the trial court's broad mandate.

materially relying in good faith on the truth and completeness of the representations and warranties expressly made by the other party to this Agreement. The parties have also either agreed to not exchange any financial statements and records, or upon agreement, have exchanged sworn Financial Disclosure Affidavits (Statements of Net Worth) and other financial data including, but not limited to, joint Federal and State Income Tax Returns, W-2 Wage and Tax statements, data regarding the benefits from employment, pension information, bank statements, checking account statements, and credit card bills, as well as other miscellaneous business and personal financial data.

R.R. at 635a. None of the assets at issue in this lawsuit were listed in the inventory or the PSA.

### Failure to Disclose Marital Assets

In his final issue, Appellant argues that the trial court abused its discretion because there was insufficient evidence that he failed to disclose marital assets. Appellant's Brief at 44. Initially, Appellant reiterates that Section 3505(d) requires evidence that he violated a Rule of Civil Procedure, and Appellee failed to establish any such violation. *Id.* at 47. Regardless, Appellant maintains that he disclosed all assets to Appellee in their joint tax returns. *Id.* at 48.

As we noted above, we review the trial court's order for an abuse of discretion, including a claim that the "order is not supported by competent evidence." *Conway*, 209 A.3d at 371. In *Rosiecki v. Rosiecki*, 231 A.3d 928 (Pa. Super. 2020), this Court set forth the applicable law in interpreting marital settlement agreements:

A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise. The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification.

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

* * *

In construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. In other words, the intent of the parties is generally the writing itself. In ascertaining the intent of the parties to a contract when unclear from the writing itself, the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions. Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements.

*Rosiecki*, 231 A.3d at 932-33 (citations omitted and formatting altered);

*see also Peck*, 707 A.2d at 1165.

In *Stoner v. Stoner*, 819 A.2d 529 (Pa. 2003), our Supreme Court addressed "whether a postnuptial agreement [was] a valid and enforceable

contract" under the particular facts of that case. **Stoner**, 819 A.2d at 529.

In resolving the issue, the **Stoner** Court noted the following:

> parties to these agreements do not quite deal at arm's length, but rather at the time the contract is entered into stand in a relation of mutual confidence and trust that calls for disclosure of their financial resources. In light of this unique relationship, we reaffirm the principle . . . that full disclosure of the parties' financial resources is a mandatory requirement. This requisite acknowledges that the parties stand in a closer relationship beyond that of professional acquaintances negotiating a commercial contract. . . . [T]he right balance is struck by requiring full disclosure of financial assets, in conjunction with the protection of traditional contract remedies for fraud, misrepresentation or duress.

**Id.** at 533 (citation omitted and formatting altered).

> In **Bennett**, the Court similarly explained:

> If an agreement provides that full disclosure has been made, a presumption of full disclosure arises. Likewise, . . . [i]f a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence. Thus, [a]bsent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements. This Court subsequently explained, an agreement is valid even if it does not contain financial disclosure itself and can be upheld if it merely recites that such disclosure has been made. Indeed, a full and fair disclosure in the property settlement agreement merely requires sufficient disclosure to allow the intended party to make an informed decision.

**Bennett**, 168 A.3d at 245-46 (citations omitted and formatting altered).

**Conclusion**

Here, after careful review of the record, the parties' arguments, and the trial court's reasoning, we affirm on the basis of the trial court's opinion. **See** Trial Ct. Op. at 24-26. We do not disturb the trial court's credibility

determinations and its fact-finding, as they are supported by the record. *See Conway*, 209 A.3d at 371.  We reiterate that the trial court has "full equity and jurisdiction to issue orders necessary to protect the interests of the parties and effectuate economic justice and insure the fair and just settlement of the parties' property rights."  *See Annechino*, 946 A.2d at 124 (formatting altered).  The trial court properly exercised its discretion to grant equitable relief in light of any disclosure or non-disclosure.  *See id.* For these reasons, we affirm.

Order affirmed.


*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/16/2020*



Case # 2015-60295-0066 D   12551081
Main (Public)
Code 5214        Judge 49
Rcpt Z2306426  3/4/2020 3:29:04 PM

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## DOMESTIC RELATIONS DIVISION

CHARLES ARTILLIO, Jr. :   **Docket No. 2015-60295-D**

      :

        :

vs.        :   **Superior Court Docket No.: 158 EDA 2020**

        :

        :

TERESA ARTILLIO     :    **IN DIVORCE/SPECIAL RELIEF**

### OPINION

This is an appeal by Charles Artillio, Jr. (hereinafter, "Husband"), from the Order of this Court dated December 12, 2019, and the findings related thereto, granting a Petition for Special Relief for Constructive Trust to Teresa Artillio (hereinafter, "Wife").

### BACKGROUND

Wife and Husband were married on August 8, 1987, separated on August 25, 2014 and divorced on July 27, 2015.

On February 24, 2015, the parties signed a Property Settlement Agreement (PSA1) which had been *solely and unilaterally prepared by Husband* who testified to having it purchased, along with forms for the divorce pleadings, from an online website. Said agreement was signed by Husband and Wife in the presence of a notary public. At the time, neither had been represented by any attorney. (Exhibit W-6; N.T., 10/31/19, pp. 32-33). (Emphasis added).

A second and similar Property Settlement Agreement (PSA2) also later surfaced. The second PSA had been was filed in the Office of the Prothonotary of Bucks County by Husband

38

on February 25, 2015, and was incorporated into the Divorce Decree entered by the court on July 27, 2015. (Exhibit W-7). Both agreements were prepared by Husband. The difference between PSA1 (Exhibit W-6) and PSA2 (Exhibit W-7) is that Wife later discovered PS1 (Exhibit W-6) to be missing pages 7 and 8.

On February 25, 2015, and one day after having obtained signatures on the Property Settlement Agreement, Husband filed his Complaint in Divorce with the Prothonotary, along with many of the documents necessary to finalize the divorce. Among the filings, Husband also included an Inventory of Marital Property.

The Divorce Complaint listed Wife's address as 139A Equestrian Row, Bensalem, PA even though at the time that residence had not been completely built, nor was it yet owned by Wife. On March 18, 2015, Wife was served with the Divorce Complaint.

Each PSA contained a "Reliance on Material Representations" clause which states, "Charles E. Artillio Jr. and Teresa E. Artillio acknowledge that in entering into this Agreement, each has been induced to and is directly and materially relying in good faith on the truth and completeness of the representations and warranties expressly made by the other party to this Agreement."

The PSAs and Husband's filed Inventory disclosed only three assets identified as "marital property." These were: 139A Equestrian Row; a 2012 Ford Escape; and a 2006 Nissan Murano. (N.T., 8/20/19, pp. 17-18). As indicated before, construction on the property known as 139A Equestrian Row had not yet been completed nor was the purchase yet complete. The parties' actual marital residence was not listed in neither the Inventory nor either PSA. It was located at 87 Cedar Brook Drive, Churchville, Bucks County, Pennsylvania.

2

During the hearing, it was made apparent that prior to the parties' separation and through February, 2015, Husband made numerous verbal representations to Wife. These included an assertion that his business interests were either worthless or non-existent. He further represented that lenders were in the process of seizing his business assets, and that the only marital asset of any value was the jointly owned marital residence located at 87 Cedar Brook Drive. The parties utilized a large portion of the proceeds from the sale of their marital residence in order to purchase 139A Equestrian Row, on June 18, 2015, which was then titled only in Wife's name. Husband claimed deeding the new property accordingly was necessary for protection of Wife's property interests.

One day before the settlement on purchase of same on June 18, 2015, Husband presented to Wife the documents necessary to finalize the divorce, including her 3301(c) Affidavit, which Wife signed on June 17, 2015. The Divorce Decree was entered on July 27, 2015. The parties entered their respective next life phases.

However, on December 6, 2016, following Wife's discovery that Husband had misappropriated her IRA account in the amount of $10,142.29, Wife filed a Petition of Contempt. (N.T., 1/26/17, p. 14). Husband had also failed to repay Wife for her loan to him to pay his credit card. At a hearing held before the Honorable Robert O. Baldi of this bench on January 26, 2017, Husband was ordered to repay Wife's IRA $10,142.29 within 30 days and $450 in attorney fees. In order to reimburse Wife for the money she had loaned Husband for a credit card payment, the court further directed Wife's then-attorney to prepare a Judgment Note for $15,000 due April 20, 2018. (N.T., 1/26/17, pp. 84-89). At no time during that proceeding did Husband choose to challenge the court's jurisdiction to enforce the PSA.

3

Later in January 2017, Wife agreed to serve as co-signer on a loan to help parties' daughter purchase a townhome. As part of the loan application process Wife was asked to provide the prospective lender with a copy of her Property Settlement Agreement. Amidst this process, the lender notified Wife that pages 7 and 8 of her copy of the PSA, sent to her by Husband, were then missing. When Wife asked Husband for the pages, he replied there were no such pages and the numbering was wrong and that anyone going to the court would discover the PSA was missing those pages. (N.T., 8/27/19, pp. 13-21; Exhibits W-6 and W-7). Husband thereafter proceeded to send to Wife two blank pages numbered 7 and 8. (N.T., 8/27/19, pp. 131-133).

Wife then proceeded to the Bucks County Courthouse, Domestic Relations Prothonotary, discovering that contrary to Husband's representation the PSA, which he filed with the Court did, in fact, contain a pages 7 and 8 (PSA2).

In March 2017, following this discovery, Wife hired a private investigator to perform a background search to identify Husband's assets and business interests. Wife also hired counsel and obtained some documents from Husband during a meeting between Wife, Husband and their respective attorneys in June 2018.

On February 14, 2019, Wife filed a Petition for Special Relief for Constructive Trust and Accounting against Husband.

By Order dated February 25, 2019, a hearing was scheduled for April 16, 2019. Said hearing resulted in the Trial Judge determining that he had a conflict and an out of county Judge needed to be assigned.

On June 24, 2019, the Administrative Offices of the Pennsylvania Courts appointed

4

Senior Judge Leslie Gorbey to hear the matter.

On June 25, 2019, this Court ordered the scheduling of a new hearing for August 20, 2019 and required the filing of a pre-trial statement by both parties.

Hearings were held on August 20th, 27th, October 24th and 31st, 2019.

After the second day of testimony, Husband moved for a Demurrer which was denied by the Court.

Testimony concluded on October 31, 2019, and the attorneys requested until November 22, 2019, to file proposed findings of fact.

During her first day of testimony, on August 27, 1019, Wife testified that the only business of Husband's which she had been aware of because he received paychecks (or knew he was a partner in and the carpenter on site) that went into their joint account was Keystone Redevelopment Group. (N.T., 8/27/19, pp. 105-106).

This Court, upon consideration of all the testimony and evidence presented at the hearings on August 20th, 27th, October 24th and 31st of 2019, determined Wife had proven by clear and convincing evidence that Husband misrepresented material matters of fact concerning marital assets prior to the decree. We further found Husband had committed fraud in deceiving Wife about existence and/or value of marital asserts, and failed to provide full disclosure of numerous marital assets to Wife during their divorce. Therefore, this Court established a constructive trust as to all undisclosed assets, as provided in the contemporaneous Order of Court.

Specifically, the Order of December 12, 2019, states, in part, as follows:

". . . after four half days of testimony on August 20th, 27th, October 24th and 31st of 2019,

5

which were attended by the parties and their respective attorneys, the Court finds that Teresa E. Artillio, "Wife" established by clear and convincing evidence that Charles E. Artillio, Jr., "Husband" made material misrepresentations concerning marital assets, committed fraud in deceiving Wife about existence and/or value of marital assets and failed to provide full disclosure of marital assets in division of marital property. Pursuant to Section 3505 (d) of the Pennsylvania Divorce Code, 23 Purdon's Consolidated Statutes Annotated, a constructive trust is established for all undisclosed assets/businesses including, but not limited to the following:

1. Keystone Construction Advisors

2. Bridge Business Center

3. Artillio Family Investments

4. Keystone Redevelopment Group

5. Keystone Heritage Group

6. Single Ski and Surf

7. Nehemiah Group . . . . "

Trial Court Order, 12/12/19.

On January 6, 2020, Husband filed a timely Notice of Appeal from the Order entered on December 12, 2019.

On January 22, 2020, Husband filed his Concise Statement of Matters Complained of on Appeal.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Husband's "Concise Statement of Matters Complained of on Appeal" enumerates three allegations that the Trial Court erred, as a matter of law. Husband's three allegations, which are

6

reproduced herein, verbatim are as follows:

1. It was an error of law and an abuse of discretion for the Court to deny Appellant's "Motion for Demurrer" requesting the dismissal of the Petition for Special Relief (hereinafter "Petition") filed by the above-captioned Defendant, Teresa Artillio (hereinafter "Appellee"), as Appellee was not legally entitled to the relief sought via the Petition, that being the creation of a constructive trust pursuant to 23 Pa.C.S. 3505 (d).

2. It was an error of law and an abuse of discretion to grant the relief sought by Appellee in the Petition that being the creation of a constructive trust pursuant to 23 Pa.C.S. 3505 (d), due to: a) the absence of evidence that Appellant violated any general rule of the Supreme Court by failing to disclose information to Appellee; and b) the failure of either party to file a count sounding in equitable distribution pursuant to 23 Pa.C.S. 3502 in the underlying divorce action.

3. It was an abuse of discretion for the Court to find that assets outlined repeatedly and in detail within jointly filed federal and state income tax returns that Appellee signed and verified under penalty of perjury as being accurate before such time as the parties' divorced were "undisclosed" to Appellee.

## DISCUSSION

Our ruling, based on the evidence, originated from Wife's "Petition for Special Relief for Constructive Trust and Accounting," filed February 14, 2019 pursuant to 23 Pa.C. S. § 3323(f). That statutory provision cited therein states as follows:

> **(f) Equity power and jurisdiction of the court.** --- In all matrimonial causes, the court shall have full equity power and jurisdiction, and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

According to the Divorce Code, the legislative intent and policy of this Commonwealth is to: "**Effectuate economic justice** between parties who are *divorced* or separated. " 23 Pa. C. S.

§3102(a)(6) (Emphasis added). The specific language of this policy under the statute is to "insure a fair and just determination and settlement of their property rights." Id. The language expressly requires the policy objectives "shall be considered in construing the provisions of this part... " 23 Pa. C.S. § 3102(b).

Our courts encourage amicable agreement between parties, rather than protracted litigation, as a means of reaching resolution of property issues. However, the effect of agreement is not unfettered. In fact, the Rules of the Supreme Court, require a party to list all his or her marital and nonmarital assets on the inventory, marital asset summary and pretrial statement. Pa. R. Civ. P. 1920.33; See also Kozel v Kozel, 97 A.3d 767 (Pa. Super. 2014)(husband's failure to disclose legal and/or equitable interests in several business entities and gas wells constituted grounds to declare creation of a constructive trust).

Further as stated in the Divorce Code, particularly 23 Pa.C.S. §3105 as to"Effect of agreement between parties:"

> **(a) Enforcement.** – A party to an agreement regarding matters within the jurisdiction of the court under this part whether or not the agreement has been merged or incorporated into the [divorce] decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

This court, which holds original jurisdiction in cases of divorce, retains power to dispose of property rights and issues. 23 Pa.C.S. §3104(a)(4). Based on our findings, the most relevant statute pertinent to the instant matter is 23 Pa.C.S. 3505 (d). This statute states:

> **(d) Constructive trust for undisclosed assets.**—If a party fails to disclose information required by general rule of the Supreme Court and in consequence thereof an asset or assets with a fair market value of $1,000 or more is omitted from the final distribution of

8

property, the party aggrieved by the nondisclosure may at any time petition the court granting the award to declare the creation of a constructive trust as to all undisclosed assets for the benefit of the parties and their minor or dependent children, if any. The party in whose name the assets are held shall be declared the constructive trustee unless the court designates a different trustee, and the trust may include any terms and conditions the court may determine. The court shall grant the petition upon a finding of a failure to disclose the assets as required by general rule of the Supreme Court.

In this instance, Husband and Wife are clearly parties to the Agreement which Husband had prepared based on his having obtained the online form. In Simeone v. Simeone, 581 A.2d 162 (Pa. 1990), our Supreme Court clarified the standards for determining the validity of a Marital Settlement Agreement. The Simeone court admonished, "If an agreement provides that full disclosure has been made, a presumption of full disclosure arises." Id. at 167. Likewise, the Court explained, "If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by **clear and convincing evidence**." Id.

As stated, we determined that Wife has proven, through clear and convincing evidence, fraud or misrepresentation on the part of Husband's failure to disclose significant marital assets. We will address the first issue raised by Appellant, who claims that is was an alleged error of law and an abuse of discretion for the Court to deny his "Motion for Demurrer" which had requested dismissal of the Petition for Special Relief filed by Wife. Husband asserts that Wife was not legally entitled to the creation of a constructive trust pursuant to 23 Pa.C.S. 3505 (d), which was part of the relief requested within the petition.

There is no authority in support of Husband's legal argument. Indeed, the first and second issues raised by Husband are related and we address these arguments together. Husband

9

initially maintains that since the parties, acting as *pro se* litigants, had not included an Equitable Distribution count within their filed divorce complaint, Wife is therefore unable to look to the PSA as a basis to recover.

Husband's assertion overlooks the fact that the PSA fulfilled the need for an Equitable Distribution claim. Further, we note that in Annechino v. Joire, 946 A.2d 121 (Pa. Super. 2008), our Superior Court held a trial court had the authority to enforce a marital property agreement, irrespective that the parties in that case had neither incorporated nor merged it into the final divorce decree. Id. In this case, and similar to the circumstances in Annechino, no economic claims had been raised in divorce pleadings. The Annechino court specifically stated in pertinent part as follows: "*Although, as wife points out, section 3104(a) discusses property rights that can be considered if raised in the pleadings, section 3104 does not eliminate the power granted in section 3105 permitting the enforcement of an agreement (a) regardless of whether equitable distribution was pled and (b) regardless of whether an agreement had been merged or incorporated into the divorce decree.*" Id. at 122.

The Superior Court in Annechino found the legislative intent of the provision was designed to extend the divorce code's remedies, sanctions, and vehicles of enforcement to agreements covering certain matters ancillary to divorce, and agreements concerning marital property distribution, all of which are included in the divorce code. Id. at 123.

Thus, in Annechino "since the court has personal jurisdiction over the parties to the divorce action, section 3323(f) is a catch-all provision, granting not only broad enforcement powers, but "full equity and jurisdiction" to issue orders necessary to protect the interests of the parties and effectuate economic justice and insure the fair and just settlement of the parties'

property rights." 23 Pa.C.S.A. § 3323(f). [5]

Accordingly, the instant matter was properly heard in Family Court. Therefore, we reject as meritless Husband's claims that "the failure of either party to file a count sounding in equitable distribution pursuant to 23 Pa.C.S. § 3502 in the underlying divorce action," was necessary for the creation of a constructive trust under 23 Pa.C.S. §3505 (d) by the Family Court.

To accept Husband's argument, to the contrary would be not only in contravention to the legislative intent, and the express holdings of the Superior Court in <u>Annechino</u>, but also not in keeping with the document he prepared. For the aforementioned reasons, we further disagree with Husband's argument that economic claims relating to divorce need to be enforced in the civil court division as a breach of contract. Noteworthy is that Husband did not challenge this Court's ability to enforce the Property Settlement Agreement at the earlier contempt hearing. The PSA concerned marital property distribution, which is a matter included in Part IV of the Divorce Code. Accordingly, this court has broad power to enforce it, including power to create a constructive trust for violation of the statute.

As stated above, Husband prepared the Inventory and Appraisement, based on forms which he had procured through an online divorce service. The Rule governing preparation of Inventory and Appraisements is Pa. R.Civ.P. 1920.33. That rule requires parties to disclose the existence of all marital property. Husband's failure to forego disclosure of certain assets is in clear contravention of that rule. The Inventory and Appraisement form which Husband procured clearly states *"the plaintiff lists all marital property in which either or both spouses have a legal*

---

[5] See <u>Foley v. Foley</u>, 572 A.2d 6 (Pa. Super. 1990) (divorce court retains equitable authority, following entry of divorce decree, to intercede upon petition by aggrieved party to address and correct economic injustice); <u>Cheng v. Cheng</u>, 500 A.2d 1175 (Pa. Super. 1985). 23 Pa.C.S. § 3323(f). <u>See Piso v. Piso</u>, 761 A.2d 1215, 1219 (Pa. Super. 2000).

11

*or equitable interest individually or with any other persons as of the date this action was commenced."* (Exhibit, W-22). Husband's testimony and the exhibits reveal the document clearly called for an obligation to divulge the existence of assets. From Husband's testimony, he decided against listing certain assets which he admits to owning, but which he also arbitrarily determined to be valueless. This demonstrates Husband's cognizant existence of significant business assets not in any way included within the Inventory and Appraisement.

Moreover, in the case at hand, the record itself, including Husband's preparation and filing of an Inventory and PSA, divulges to us that his express intent had been to create a document he considered enforceable in favor of his own interests. The document's paragraph 11 contained a "Costs of Enforcement" provision, calling for payment of counsel fees and other costs associated with enforcement to be borne by the "defaulting party." (See W-6 and W-7, p 6).

Husband now claims not to have fully understood the extent of his disclosure obligations under Property Settlement. Hence Husband implicitly claims, he could not have defrauded Wife because he did not fully understand the document he had prepared and presented to her for signature. We view these assertions by Husband as disingenuous and palpably lacking in credibility. First, despite his claimed lack of understanding, Husband clearly made the determination of which assets to disclose and which he chose against listing on the court documents to which he had attested his required sworn verification. He obviously considered but decided against listing the businesses. As to his claimed failure to appreciate the extent of his legal obligations, Husband did not affirmatively identify any specific provisions of the PSA which were not to his understanding. Further, he chose not to retain counsel to explain any questions he may have had regarding the forms which he had procured. Husband would have

12

this court believe he presented to Wife and filed with this court a set of documents about which held for him almost no substantive understanding.

Husband now claims the undisclosed marital assets had been valueless. Husband admitted within his testimony having made this determination arbitrarily and continues to maintain the assets were worthless. (N.T., 10/31/19, pp. 20-26). The evidence proves otherwise. One of the business real estate properties was listed for sale at the price of 19.9 million. (N.T., 10/31/19, p. 34).

Testimony by Husband on this subject was as follows:

Q. Now, last week you shared with us that – and it came up, Mr. Salzer was asking you about the - - you referred to it as the marketing piece, one of my exhibits that listed some of the entities that you have ownership interest for $19.9 million. Do you remember that?

A. I recall the document.

Q. Okay. And you called that a marketing piece to sell some of these pieces [properties], right?

A. That's correct.

Q. And then when we were here in August it had not been sold but was on the market, and you acknowledged that in your testimony, correct?

A. Been on the market for many years, yes.

Q. And then when you came back in October, you said –Mr. Salzer asked you: Has any part of it sold, and what kind of profit did you realize, and when did it sell?

And your answer was at page 131: Building 360 and Building 370 sold approximately two weeks ago for $10.5 million.

So, I guess my question is, is that when you say the building was sold, is the - - was the agreement of sale entered into two weeks ago from October?

A. No. It was prior to that.

Q. Okay. So how much prior to that?

A. Maybe three months.

Q. So when you testified in August you didn't tell us that the building was under agreement of sale.

A. No one asked if it was under agreement of sale. It's been under agreement of sale many times, and it usually fell apart several days before or a few weeks before the sale.

Q. So what you're telling me is, is that when we were discussing the buildings that you had interest in that are the subject of this litigation, because I didn't ask you the specific question, "Was the agreement under sale," you didn't feel any slight need to tell us all that that building was under agreement of sale for $10.5 million?

A. I answered the question you asked me.

Q. So the answer is you didn't tell us, right?

A. I answered the question you asked me.

Q. And the reason why you didn't tell us that or volunteer that is because that would then say, holy mackerel, the building I was telling by wife for years and years that was underwater, was going to be foreclosed upon, et cetera, et cetera, is under agreement of sale, Mr. Patrizio, for $10.5 million. You didn't think - - you didn't want to share that, did you?

A. I didn't mind sharing that. I wasn't asked the question.

14

Husband further testified as to the amount he received when the real estate sold:

Q. But you got your money?

A. I got a check today for $28,000.

Q. Today?

A. Yes.

Q. And do you know if you're going to get any more money?

A. Probably will receive additional funds.

Q. All right. And so on this particular piece of property, that was two or three parcels?

A. Um. . .

Q. Let me see if I can help you. There were three buildings and a five-acre-plot, right?

A. Three buildings, five- acre parcel, plus or minus, yes.

Q. So what's left?

A. 310 George Patterson Boulevard and the parcel out front.

Q. So the parcel out front is five acres, right?

A. It's not five acres, but it's marketed as five acres, correct.

Q. Right. So now you still, in addition to what you're going to receive from the sale of two buildings, we still have, what is it, 310 left?

A. Yes.

Q. And 310 is Keystone Development, right?

A. 310 – Keystone Redevelopment Group owns 310.

Q. Right. And you own 25 percent of that, right?

15

A. Currently, 30 percent of that.

Q. 30 percent? Before it was 25. How did you get the other five?

A. Our other partner was put out of the company when the sale took place two weeks ago.

Q. Wonderful. So now you own 30 percent of Keystone Redevelopment?

A. 33 percent, yes.

Q. And, again, this is the property we don't know much about how much -- how – is a hundred percent rented?

A. It's currently probably 92, 93 percent rented.

Q. So can you give us a ballpark of how much rental income you make every month on that?

A. I cannot. I do not know the numbers . . .

Q. What's the square footage of the building?

A. Roughly a hundred thousand square feet.

Q. And if it's 12 or $15 a square foot, that the monthly rental?

A. Some tenants pay $5 a square foot. Some tenants pay $15 a square foot depending on the space.

Q. So if we averaged $10 a square foot, how much would that be a month?

A. Hundred thousand dollars.

Q. That's what I got. So you might be making as much as a hundred thousand dollars a month. When I say "you," a 30 percent owner of that, and --

A. That's not correct.

16

Q. All right. Let me just withdraw that. During this period of time that you were going through the divorce, you had that ownership interest, yes, 25 percent?

A. Correct.

Q. Okay. Now, so by my count we're up to about seven places after Canal. And then eight would be Nehemiah. Or we could count that as one, right, Nehemiah and Canal –

A. Correct.

Q. . . . Okay. And then we have another company. I think that we're up to eight or nine now. Keystone Contractor Services, and that converted to Artillio, right?

A. That's correct.

Q. Okay. So we got a total of about eight or nine business entities that you owned at or around the time of this divorce, correct?

A. That's correct.

(N.T., 10/31/19, pp. 41-44).

Further we do not accept as credible Husband's hearing testimony it had been his belief was that the assets were "upside down." (N.T., 8/20/19, p. 38). In fact, based on the evidence including and particularly Husband's testimony, this court concludes there is clear and convincing evidence Husband believed the assets to have had significant value, and for that very reason he omitted these from the PSA and the Inventory, and materially misrepresented these to Wife. Husband testified that the business interests which he failed to disclose in the inventory of the PSA, remained even four years later, as viable business entities. (N.T., 8/20/19, pp. 15-29).

Wife's assertions are corroborated by her testimony from August 27, 2019, which we accepted as credible. Wife testified that:

17

Q. So when he [your husband] was saying that business was bad and needed to utilize the line of credit, is that how you thought bills were being paid?

A. Absolutely.

Q. All right. So that the discussions of particular investments and entities you believed were all under the rubric of Keystone?

A. That is the only company name I knew of.

(N.T., 8/27/19, p. 108).

She further testified, "Like I said, the only business I ever knew of was Keystone Redevelopment, and it was going under, and the partners weren't pulling their weight. That was it. Everything, everything was basically going bankrupt. " (N.T., 8/27/19, p. 120).

Husband's failure to disclose the businesses to Wife is corroborated by his arbitrary omission of these from the PSA, and the missing pages 7 and 8.

Wife gave further credible testimony concerning Husband's lack of disclosure as follows:

Q. So the paragraph of the agreement that talks about reliance on material representations, when you signed the agreement [PSA], did you know that the agreement contained that paragraph?

A. I did not. But I also at the time believed there was nothing at all for me to have a part of.

Q. And when - - and the reason why you believed that was based upon what?

A. Based upon the last four years of Chuck telling me that the business was going down, and it wasn't worth anything, and anything that they had, the banks were taking back.

Q. At any time during those four years did he ever bring you a document, a spreadsheet,

a financial statement to validate any of the representations that he was telling you about that the businesses were worthless?

A. No.

(N.T., 8/27/19, p. 137).

At the first hearing on August 20, 2019, Husband testified as follows at to his many business entities:

Q. Referencing W-20 [Wife's Exhibit 20], this is a document that we got off the internet from the corporation bureau.

A. Understood.

Q. And it says that you are the president of this company [Keystone Construction Advisors]?

A. That's correct.

Q. And that you created this company in the year 2006.

A. That seems to be about the right time. . .

Q. So those are essentially your three partners that in 2006 you started this company called Keystone Construction Advisors, correct?

A. Correct.

Q. And that is still in existence today, correct?

A. Correct.

Q. And it was still in existence at the time when you were going through your divorce and filed your divorce complaint, correct?

A. Correct.

19

(N.T., 8/20/19, pp.16-17).

Husband was shown his tax return from 2014 which says he had earned income of $84,000 from Keystone Construction Advisors. When questioned concerning this income from 2014 from a company which was supposedly valueless, Husband stated as follows:

Q. Does that refresh your recollection that this company paid you $84,831?

A. That's what the document says, yes.

(N.T., 8/20/19, p. 29).

We found Husband's testimony to be contradictory concerning another undisclosed asset, Artillio Family Investment, allegedly part of Keystone. According to Wife's testimony and back in 2007, Husband was going to open bank accounts "just for the kids." (N.T., 10/24/19, pp. 34-36). Husband originally claimed to have owned one hundred percent of the investment. He then stated he had told Wife it was solely owned in trust for the children. However, and at the hearing, Husband claimed at the time of the divorce he had owned 90 percent. (N.T, 10/31/19, pp. 45-47). From this testimony, we concluded Husband was evasive to Wife at the time of the divorce and such evasiveness continued even during his testimony at the hearing.

In another instance and regarding another business entity, Singles Ski website, SinglesSki.com, Wife's counsel confronted Husband with an online advertisement which clearly listed him as a "Partner/Trip Host," Husband claims he was a host on trip and it was just "easier to tell guests that I was a partner." (N.T., 10/31/19, pp. 49-50). The advertisement references trips dating back to 2008. Husband further claimed he will not become a partner until January 2020. We did not accept Husband's denial as credible. Exhibits W-34 and W-35 show his interests as a partner in this out-of-state venture.

In fact, this cumulative after-discovered information demonstrates quite the opposite: the assets held significant value and Husband's reasoning for not disclosing them was precisely because he wished to keep this information from Wife.

The business interests which Husband failed to disclose are as follows:

(1) Keystone Construction Advisors

(2) Bridge Business Center

(3) Artillio Family Investments

(4) Keystone Redevelopment Group

(5) Keystone Heritage Group

(6) Single Ski and Surf

(7) Nehemiah Group

Husband testifed as to the Inventory that he filed as follows:

Q. And if you could for me turn to Wife's Exhibit 22. Do you see that?

A. Yes.

Q. That's a document that you filed when you were processing and instituting and getting your divorce in the Court of Common Pleas of Bucks County. Do you see that?

A. I do.

Q. And the document type: The plaintiff lists all marital property in which either or both spouses have a legal or equitable interest indiviudally or with an other persons as of the date this action was commenced.

Do you see that there.

A. I do.

Q. And it's correct that the only 3 items that are listed is a piece of of real property and two automobiles, correct?

A. Correct.

Q. You did not list your ownership in Keystone Construction Advisors, Inc., correct?

A. Correct.

Q. Can you tell us why you did not do that?

A. Keystone Construction Advisors, Inc., was a passive construction company that serves our real estate ventures and ventures of tenants. It did no outside work for any other other entitites or any other businesses.

Q. Well a moment ago when I asked what was your employment beginning in 2010, it was you who told us Keystone Construction Advisors Inc., yes?

A. That is correct.

(N.T., 8/20/19, pp. 17-18).

Throughout the entirety of the four separate hearing dates, Husband continued to assert his ignorance on basic information including the amount gross sales for Keystone Construction Advisors. In fact, during the last hearing date of October 31, 2019, and when questioned by Wife's attorney, Husband denied knowledge and seemed to display neither answers nor curiosity about the gross sales amount for this company in which he serves as president. This leads us to conclude that Husband is either entirely disinterested in his gross sales from the businesses or simply still did not have any willingnness to share this basic relevant information with Wife.

Wife alleged in both her filing and testimony that Husband not only did not disclose the assets on the PSA, but also fraudulently misrepresented the value of his businesses to which Wife

22

relied on when signing the PSA. While Wife's Petition did not include the corresponding rule number related to constructive trust, the WHEREFORE clause clearly indicates that Wife seeks recourse through a constructive trust.

Wife's Petition requests the following relief:

It is further requested that all of the entities which Husband failed to disclose to Wife shall be placed in a Constructive Trust and Discovery shall be ordered to be completed within sixty days to determine the true value of the marital estate and to compel Husband to tender to Wife her equitable marital share of the full marital estate and to award all reasonable counsel fees and other costs in connection with the Petition; and granting Wife's such other relief as the Court deems equitable and just including interim counsel fees.

Wife's assertions are corroborated in her testimony from August 27, 2019. She stated, "Like I said, the only business I ever knew of was Keystone Redevelopment, and it was going under, and the partners weren't pulling their weight. That was it. Everything, everything was basically going bankrupt." (N.T., 8/27/29, p 120).

It was only after the contempt hearing that was held before Judge Baldi in this matter, and the hiring of an investigator by Wife based on her suspicions over the IRA money and Husband's representation over the missing pages to the PSA, that Wife began to learn that Husband's business assets were not only still in existence, but that they had actual value at the time of divorce. As a result, Wife has requested that Husband's assets be placed in a constructive trust to properly preserve her equitable distribution rights until discovery can be conducted to ascertain what exactly the business interests and how much they are worth.

Pennsylvania courts require there must be an element of misrepresentation to invoke a constructive trust. Bennett v. Bennett, 168 A.3d 238, 247-248 (Pa. Super. 2017). Constructive Trusts are not subject to any time limitations. Kozel v. Kozel, 97 A.3d 767, 770 (Pa. Super.

23

2014). We therefore determined based on the evidence and misrepresentations noted, that the assets in question should go into a constructive trust and named a trustee.

The third issue complained of by Husband is that Wife knew about the financial information, as it had been disclosed on their jointly filed income tax returns. However, and under cross-examination with exhibits during these hearings, Husband admitted having provided all tax return data to the accountant, all without any assistance from Wife. (N.T., 10/31/19, p. 16). In addition, Wife's signature appeared nowhere except on the federal e-filing authorizations. Wife testified that Husband provided all tax return information to the accountant and that she was not privy to this information during the marriage.

Husband's misrepresentation of assets claiming she saw them on the tax returns was discussed by Wife's counsel's cross-examination of Husband:

Q. When you had your tax returns prepared --

A. Yes.

Q. --you were the person who gave the information, or your business partners, to your tax preparer?

A. Correct.

Q. My client had no involvement in that, correct?

A. Correct.

Q. So this document here, No. 3 shows no evidence that my client signed anything on that document, correct?

A. This is a document that was signed e-file.

Q. Right. But I'm referring to [Exhibit] No. 3. There's nothing on No. 3, the multipage

24

PA income tax return for 2013 --

A. Correct.

Q. --that shows my client had to sign anywhere on that document, right? In fact, on the second page your signature and her signature does not appear.

A. Correct.

Q. Okay. Then in order to file this document, or to demonstrate the filing, we go to Exhibit No. 4.

A. Okay.

Q. You see that?

A. I see it.

Q. Now, that one, again, is a two-page document that has my client's signature on it, correct?

A. As well as mine, correct.

Q. Well, with no information about these other entities on that two-page document, correct?

A. Correct.

(N.T., 10/31/19, pp. 16-17).

When Wife first testified as to process of signing tax returns:

Q. You signed joint tax returns through 2014, correct?

A. Yes.

Q. And when you signed the tax returns, tell us what that process was like with your husband.

25

A. Chuck had always had the role of taking care of the taxes, so he would bring the tax papers to me at tax time. There would be a sticky that says "Sign" with an arrow, and I trusted my husband, and I signed. I did not review them. (N.T., 8/27/19, p. 108).

We accept that given this less than ideal arrangement, Wife would have difficulty deciphering the tax returns from the professional preparers considering her having not been involved with their tax returns. Moreover, these concerned business information, which Husband chose not to discuss with Wife. Indeed, beginning in 2010, Husband shared very little financial information with Wife as to the various construction projects and real estate ventures he was engaged in that generated his income other than to tell her they were not doing well and on the verge of bankruptcy. Finally tax returns alone do not establish or reflect the value of a business.

In the case at hand, we found that Wife produced clear and convincing evidence of misrepresentation, fraud and a failure to disclose by Husband on the Property Settlement Agreement. As stated above, 23 Pa.C.S. § 3102(a)(6), provides that it is the policy of this Commonwealth to: "*Effectuate economic justice* between parties who are *divorced* or separated . . . and *insure a fair and just determination and settlement of their property* rights. " (Emphasis added). In the instant case, economic justice cannot be adequately effectuated without the creation of a constructive trust. Neither can a fair and just determination and settlement of the parties' property rights be insured without such a trust. Upon consideration of all the testimony and evidence presented at the hearings on August 20th, 27th, October 24th and 31st of 2019, this Court found by clear and convincing evidence that Husband misrepresented material matters of fact, committed fraud, and failed to disclose numerous marital assets to Wife.

26

Therefore, this Court established a constructive trust as to all undisclosed assets.

## CONCLUSION

For the reasons stated above, Mr. Artillio's appeal should be **QUASHED** or **DENIED.**

BY THE COURT:

_February 26, 2020_
DATE

_Leslie Gorbey_
LESLIE GORBEY     S.J.

**Copies Sent To:**

Robert J. Salzer, Esquire
Williams Family Law, P.C.
43 N. Pine Street
Doylestown, PA 18901

*Attorney for Appellant*

Stephen P. Patrizio, Esquire
Dranoff and Patrizio, P.C.
1500 J.F.K. Blvd., Suite 1205
Philadelphia, PA 19102

*Attorney for Appellee*